## No. 30,956

THE PEOPLES EXCHANGE BANK OF ELMDALE, *Appellant*, v. JOHN MILLER et al., *Appellees*.

(29 P. 2d 1079.)

Opinion filed March 10, 1934.

*W. C. Harris* and *W. L. Harris,* both of Emporia, for the appellant.

*Owen S. Samuel,* of Emporia, *Charles E. Davis* and *S. R. Blackburn,* both of Cottonwood Falls, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action by the Peoples Exchange Bank, of Elmdale, Kan., against ten directors of the Chase County National Bank to recover upon a contract $930.15 interest on the deposit of the former bank in the latter bank, the interest accruing after the closing of the latter bank and the serving of notice upon the directors of demand for payment. Judgment was rendered in favor of the defendants, and plaintiff appeals.

The record shows that before the plaintiff bank deposited any of its funds in the Chase County National Bank it took an indemnity contract, signed by the ten directors, obligating themselves to pay the deposit to the plaintiff upon. demand. This contract made no mention of interest upon the deposit or any part thereof. About three years later the Chase County National Bank closed its doors, and at that time it had among its deposits $18,336.74 belonging to the plaintiff bank. The plaintiff bank immediately served notice upon each of the ten directors, signers of the indemnity contract, demanding prompt payment of the deposit, and, at or near the same time, filed a claim with the receiver of the closed bank for the same. About five months after the bank closed a dividend was paid plaintiff on the deposit, and still three months later another dividend was paid, making a total of 55 per cent thus paid by the receiver. Then it ran about eight months before anything further was paid, during which time some oral communications were had, out of which the differences here presented mainly arise. They are based upon the following allegations of the answer of each of the ten defendants:

"Further answering, said defendant alleges that prior to the payment of the last dividend by the receiver of said Chase County National Bank the defendant, E. C. ImMasche, speaking for himself and the other defendants, stated to Edward Thurston as president of said plaintiff that the receiver did not have sufficient assets to pay the depositors 100%; that said defendants and others contemplated taking over certain assets of said bank and putting up enough cash therefor to enable the said receiver to pay 100% providing the depositors would waive all claim for interest.

"That said Edward Thurston, on behalf of the plaintiff, stated that it would be willing under the circumstances to accept the payment of the face of the deposit in full settlement of the claim. That relying on this statement said defendants and others did put up sufficient cash to pay 100% to this plaintiff, and said plaintiff, by reason of said agreement, is now estopped from claiming any interest and there is no interest due it."

Appellant insists that these answers do not plead an oral contract, nor an accord and satisfaction. The trial court instructed that they did, but that question will be considered later in connection with the evidence on those questions and the answers by the jury to special questions.

Appellees urge that since the indemnity contract omitted any reference to interest there can be no liability therefor, but the court rightly instructed the jury that a liability for interest at six per cent existed under R. S. 41-101 from the time of default in payment upon demand under the contract. A statement appended to the receipt given by the plaintiff to the receiver of the closed bank for the last payment of the deposit in the sum of 45 per cent thereof, that is, of the principal only, has caused confusion as to the existence of an oral contract for the settlement without interest. It is as follows:

"In accepting dividends we do not waive any claim for interest under bond contract dated February 9th, A. D. 1925."

The following are the special questions and answers thereto given by the jury:

"1. At the time Edward Thurston engaged E. C. ImMasche in conversation in Cottonwood Falls, Kan., regarding the indebtedness claimed to be due and owing the plaintiff bank from the defendants herein, was he acting for and on behalf of the plaintiff bank by authority given him through the directors of said bank? A. Yes.

"2. If you answer question No. 1 'Yes,' did said plaintiff bank, acting through said Edward Thurston, agree to accept one hundred per cent of the deposit made by said bank with the Chase County National Bank in full payment of all indebtedness claimed by said plaintiff bank against said defendants? A. Yes.

"3. Was there a *bona fide* dispute between plaintiff and defendants or a *bona fide* doubt in the minds of either of the parties to this action as to the liability of defendants to said bank for interest on any amount claimed to be due plaintiff bank? A. No.

"4. Was there a settlement had between plaintiff bank and the said E. C. ImMasche for and on behalf of the defendants? A. Yes.

"5. If you answer question No. 4 'Yes,' state whether or not the payment of said moneys to said plaintiff bank was made by said defendants and others. A. It was.

"6. If you find that a settlement was made between plaintiff and said defendants in full of all claims on the part of said plaintiff against said defendants, state—

"(a) Was there any consideration for said settlement? A. Yes.

"(b) Was the same paid by the defendants and others? A. Yes.

"(c) Did the plaintiff agree to accept the same in full of all claims against defendants? A. Yes.

"(d) In making payment of the settlement with plaintiff bank did the defendants and others borrow $20,000 on May 14, 1929, with which to purchase the assets of the defunct bank, and out of this sum did said plaintiff bank receive the balance of the indebtedness due said plaintiff bank in full of all claims? A. Yes."

The answer to special question No. 3 shows the jury understood the attitude of the trial court as to the liability of the defendants for interest, and although for that purpose the answer and the evidence supporting it may not be of any weight, upon the element of settlement of a dispute under accord and satisfaction it may be of some consequence.

The evidence as to the existence or the making of an oral agreement about the payment of the principal and waiving the interest is as conflicting as it is possible for evidence to be. The jury chose to credit the evidence of the defendants concerning the same. There was no possible middle position regarding it. There was either an agreement of that kind made or not made. All parties agree there was a conversation about the payment of the balance of the deposit. The answers to all the special questions except No. 3 relate to this identical question and are in harmony with the evidence and theory of the defendants as to the making of such a contract. Appellant argues that if such a proposition was made by the plaintiff to accept the principal and waive the interest, there is no proof whatever that the defendants thereafter agreed to do any such thing, that there never was but one conversation on the subject and the defendants never contacted Thurston, representing the plaintiff, thereafter to conclude or make good on their part the agreement. This reasoning as to the evidence and facts is not in harmony with the answer of the jury to the special question wherein it says the plaintiff bank, through Mr. Thurston, agreed to accept the amount and proposition apparently made to him by the defendants. This is also in line with the allegations of the answers above quoted that the proposition came from the defendants and was accepted by the plaintiff. Of course the proposition could have been made by either party and accepted by the other and make a complete agreement. Neither the evidence nor the answers justify or compel the conclusion that the proposition was made by Mr. Thurston. However, the evidence and the answers to special questions do show, if the proposition did start from the plaintiff, that defendants and

others, through the receiver, did carry it into effect. Of course, there must be a meeting of the minds to make a binding contract, and there may be a reasonable intervention of time for acceptance. A full compliance through others, even without words, can complete the meeting of minds unless too much time has intervened or the proposition has been withdrawn. But the jury took the view of it that the defendants made the proposition and the plaintiff accepted it, and this view is in line with the allegations of the answers.

The appellant insists that the answers do not allege a legal contract or agreement and that they do not sufficiently plead an accord and satisfaction, because there is an entire lack of consideration for the alleged contract and no existing dispute or disagreement for the application of an accord and satisfaction. As far as the pleadings themselves are concerned, their references to the agreement, the promise to do a thing providing a certain other thing is done by the other party, its acceptance and the settlement of the claim as to interest, they seem to be sufficient to plead a contract as well as an accord and satisfaction, and the trial court construed and interpreted the answers in that way in his instructions to the jury and in the admission of evidence upon the trial. Yet the legal questions remain in the case as to whether there was a consideration for the contract as shown by the pleadings and the evidence, and whether there can be an accord and satisfaction without the existence of a dispute or disagreement.

As far as the pleadings are concerned, one promise is generally a sufficient consideration for another promise in a mutual and bilateral contract. It was said in *Kramer v. Walters,* 103 Kan. 135, 172 Pac. 1013:

"A binding contract can be made by mutual promises; each promise furnishes a sufficient consideration for the other." (Syl. ¶ 4. See, also, *City of Holton v. Kansas Power & Light Co.,* 135 Kan. 58, 65; and *Spencer v. Taylor,* 69 Kan. 493, 77 Pac. 276.)

In the Restatement of the Law of Contracts by the American Law Institute, chapter 3, section 75, it is said:

"In bilateral contracts the consideration is a return promise." (See, also, 6 R. C. L. 676.)

Appellant insists that there was no evidence to prove a new contract was entered into regarding the payment of money and that any consideration passed from defendants to plaintiff therefor. In

this connection we quote a few questions asked witness E. C. Im-Masche and answers thereto.

"Q. Tell the circumstances and what took place, Mr. ImMasche. A. As I recall—my car was in front of the bakery and Mr. Thurston was driving north and stopped his car. When he saw me, he called me to the car and asked me what we were going to do about closing the affairs of the bank. I told him the comptroller required us to pay this 6 per cent interest and we—that we didn't feel we were compelled to pay this interest.

"Q. And is that when he said he would—when he said they would accept the amount in full and waive the interest? A. Without the interest, he said.

"Q. Now, when he told you that the bank would waive its interest and all it wanted was the hundred per cent of the deposit—what did he say? A. I told him that was the only way we could close it up and he said they would be glad to get—to take theirs without interest.

. . . . . . . . . . . . . . .

"Q. Is that his exact language? A. As near as I can give it. I told him that the comptroller was tying it up and was demanding the interest on the deposits or words to that effect, and he said, 'We will be glad to take ours without interest.'"

Also, from the testimony of James Miller as to a conversation he had at the bank window with Mr. Thurston, president of the plaintiff bank—

"Q. Was anything said by Mr. Thurston what the attitude of the bank would be as to accepting the proposition? A. I don't know as he exactly said. He said they needed the money—something to that effect.

"Q. What was it he (Thurston) said to you? A. He wanted to know how we were getting along and I told him. And I told him that probably if they would throw off the interest on those deposits—if the people would—probably we would buy the assets of the bank.

"Q. What did he say? A. I don't remember his exact words—but he said he thought that would be pretty acceptable; he said they needed the money."

Part of these questions were asked by the defendants' counsel and part by the plaintiff in cross-examination. The plaintiff objected to most of these questions asked by the defendants, and the objections were overruled—we think properly.

Do these answers show a contract or a promise for a promise, or a consideration for the alleged contract?

Appellant cites *Dudley v. Reynolds,* 1 Kan. 285; *Jenness v. Cutler,* 12 Kan. 500; *Bridge Company v. Murphy,* 13 Kan. 35; *St. L. Ft. S. & W. Rld. Co. v. Davis,* 35 Kan. 464, 11 Pac. 421; *Ingels v. Sutliff,* 36 Kan. 444, 13 Pac. 828; *Schuler v. Myton,* 48 Kan. 282, 29 Pac. 163, and well-recognized texts showing that a part payment of a note overdue is no consideration to support an agreement to extend

the time for the payment of the balance, and an agreement to do, or the doing of that which a person is already bound to do, does not constitute a sufficient consideration for a new promise. The references to 13 C. J. and 6 R. C. L. are followed by the explanation that such was the earlier rule in England and in most states of the union, but more recently that rule has been modified and held to be too harsh and technical, justifying many exceptions thereto,- as are noted on page 665 of 6 R. C. L. and in the following language, on page 358 of 13 C. J.:

"A composition with creditors is a notable exception to the general rule, inasmuch as each creditor undertakes to accept a sum less than is due to him in satisfaction of a greater, and such agreements are binding."

Our own court, in the case of *Sigler v. Sigler*, 98 Kan. 524, 158 Pac. 864, held that a payment by a debtor in composition with his creditors generally by which they agree to accept less than is due them, is held to create a consideration which is sufficient, explaining the earlier holdings of this and other courts on that and similar propositions, as follows in the first syllabus, and on page 527:

"The rule that a payment of a lesser sum, accepted with the understanding that it shall be in full discharge of the entire debt, will not bar an action to recover the balance unless made upon a new and distinct consideration, rests rather upon technical considerations than upon reason, and the strict adherence to it has often resulted in preventing justice and the enforcement of the real intent of the parties. The modern tendency of the courts has been to enlarge the exceptions to the rule in order to avoid its harshness and in order to carry into effect settlements, adjustments and compromises." (Syl. ¶ 1.)

"The plaintiff relies upon the rule that an agreement to accept part in satisfaction of the whole of a liquidated demand is invalid because without consideration. (*Bridge Company v. Murphy*, 13 Kan. 35; *St. L., Ft. S. & W. Rld. Co. v. Davis*, 35 Kan. 464, 11 Pac. 421.) The reason for the rule is that there is no consideration for the release of the remainder of the debt, as the debtor gives no more than he is bound to give, and the creditor accepts no more than he is entitled to receive. The rule is said to have had its origin in a *dictum* in the English court of common pleas (*Pinnell's Case,* 5 Coke's K. B. 117). Although it is universally recognized by courts and text-writers, it has been criticised as technical, artificial and having no foundation in reasoning. (*Brooks and another v. White*, 43 Mass. 283, 285, 37 Am. Dec. 95; *Bolt v. Dawkins,* 16 S. Car. 198, 214.) In a number of states it has been entirely abrogated or modified by statute. Courts generally refuse to apply the rule where the technical reasons for doing so do not exist (*Brooks and another v. White,* supra; *Harper v. Graham*, 20 Ohio, 105, 115), and have recognized numerous exceptions to it, for instance, the payment of a part before due, or at a place other than that where the obligor was legally bound to pay, or a

payment in property, regardless of its value, or by the debtor in composition with his creditors generally by which they agree to accept less than is due them, is held to create a consideration which is sufficient." (p. 527.)

This decision was approved in *Garrison v. Marshall*, 117 Kan. 722, 233 Pac. 119, as applied to a situation where a debtor turned over to his creditors all of his property with the express understanding that any balance should return to him and any creditor accepting under this arrangement would release the debtor from all obligation. Later, when the property failed to satisfy the debts, the debtor was induced to execute a note for the balance, and the note was held to have been given without any consideration. (See, also, *Storch v. Dewey*, 57 Kan. 370, 46 Pac. 698.)

The following paragraph of the text in 41 A. L. R. 1490 is followed with citations of decisions from the United States circuit courts of appeals, courts of England and Canada and seventeen state courts, including that of Kansas:

"The general rule that part payment of a liquidated indebtedness is no consideration for the discharge of the entire debt (1 R. C. L. 184) was a deduction of strict scholastic logic, and has always been regarded as technical and unjust, and the modern tendency of the courts has been to enlarge the exceptions to this rule in order to avoid its harshness, and to carry into effect settlements, adjustments, and compromises, and one of these exceptions is where the part payment is made by or with the aid of a third person."

The answers of the jury to the fifth and sixth special questions show that the last payment made to the plaintiff was from funds procured by the defendants and others. This is supported by the testimony of ImMasche that the note to raise this money was signed by J. B. Smith and W. S. Miller, who were not defendants in this action, and that he told Mr. Thurston that others were helping raise the money, and also by the testimony of J. B. Smith that he signed such a note.

It is urged that a dispute or controversy is an essential element to sustain an accord and satisfaction, and we have already noted that the jury in this case found, in answer to special question No. 3, that there was no dispute between the parties as to the liability of the defendants for interest. But like most general rules there are universally recognized exceptions. In 1 C. J. 527,. where a dispute is embodied in the definition of accord and satisfaction as an essential element, that statement is immediately followed in the same paragraph with the following language:

"However, it is obvious that a dispute or controversy is not an essential element of some forms of accord and satisfaction, as for instance an accord and satisfaction of a liquidated claim by the giving and acceptance of a smaller sum and some additional consideration, such as new security, payment before due, payment by a third person, payment of a less sum and costs, etc., or where property, or personal services, are accepted in satisfaction."

Instead of a dispute as to liability for interest, we have here a settlement for a less sum than the principal and interest by the obligated parties with the assistance of others or third parties, and the adjustment of the obligation in this manner by the defendants with the help of others. In the case of *Matheney v. El Dorado*, 82 Kan. 720, 109 Pac. 166, the following language was used with reference to the requirements for accord and satisfaction:

"To constitute an accord and satisfaction, the agreement that a smaller sum shall be accepted in discharge of a larger one originally claimed must have been entered into by the parties understandingly and with unity of purpose." (Syl. ¶ 1.)

We conclude that in the oral agreement alleged and proved by the defendants modifying the written contract there was a meeting of the minds of the two parties which made it a legal and binding contract; that there was a consideration for the oral contract under the circumstances shown by the evidence in the acceptance of a less sum than that which was due in connection with the proposition and agreement to effect such settlement with the help of others, and that constituted an accord and satisfaction.

The judgment is affirmed.