**VANGUARD INSURANCE COMPANY,**
a corporation, Appellant,

v.

**Mel D. CONNETT and Katherine Connett,**
Appellees.

No. 6118.

United States Court of Appeals
Tenth Circuit.

Sept. 28, 1959.

Lewis W. Sanders, Kansas City, Mo. (George W. Thomas, Kansas City, Mo., on the brief), for appellant.

Thomas M. Sullivan, Kansas City, Mo. (Milton A. Abrams, Roeland Park, Kan., on the brief), for appellees.

Before PHILLIPS, HUXMAN and PICKETT, Circuit Judges.

PHILLIPS, Circuit Judge.

Vanguard Insurance Company [1] issued to Mel D. Connett and Katherine Connett [2] its policy of insurance covering the dwelling house of the insured, located in Westwood Hills, Johnson County, Kansas. The part of the policy here pertinent reads:

"This policy insures against all direct loss to the property covered caused by:

* * * 20. Sudden and accidental injury to electrical appliances, devices, fixtures, and wiring, except television picture tubes, resulting from electrical currents artificially generated."

On February 23, 1957, while the policy was in full force and effect, the insured premises were damaged as a result of the overheating of the furnace in the dwelling house, caused by the failure of the automatic controls of the furnace to function properly and cut off the gas when the temperature in the dwelling house rose to the point of the thermostatic setting.

The insured brought this action against the insurer to recover for the loss and damage to the dwelling house, alleging that it was "caused by a sudden and accidental injury to electrical appliances, devices, fixtures and wiring resulting from electrical current artificially generated." The insured sought recovery for the loss and damage, for three months' rental value and for attorney's fees.

At the close of the evidence the insurer moved the court to instruct the jury to return a verdict in its favor. The motion was overruled.

The jury returned a verdict for $5,186.75, calculated on the basis of 70% of $6,500, the cost of repairing part of the damage, two months' rental at $125 per month, and $386.75 interest. The court made an allowance of $1,000 for attorney's fees. Judgment was entered accordingly and the insurer has appealed.

In response to interrogatories propounded by the insurer, the insured stated:

"1. The device referred to was the 'cut-off' valve on a gas furnace."

They further stated:

"2. The function of said valve is to regulate the flow of gas into the furnace. This valve is governed by a thermostat, which generally causes the valve to cut off when the heat reaches a certain intensity.

"3. The injury consisted of an electrical short to the wiring and electrical part of the device."

On February 12, 1957, the insured took a trip to Minnesota and returned to their dwelling house on February 25, 1957. Upon their return they found the exterior of the dwelling house covered with splotches of white and the interior of the dwelling house very hot. As a result of the heat there was substantial damage to the furniture and furnishings, to the exterior and interior paint, to the doors, door frames, window frames, moldings, plaster and floors. The studding and joists were also loosened and squeaks developed in the floors and stairways. The heat melted candles and the wax ran down on the carpets.

Fred Bauer testified at the trial as an expert witness for the insured. For

---

1. Hereinafter called the insurer.

2. Hereinafter referred to collectively as the insured.

eight years immediately prior to the trial he had engaged in the servicing of furnaces and for 25 years immediately before that period he had installed and serviced furnaces. Prior to February, 1957, he had serviced the furnace of the insured three times at intervals of approximately one to two years.

In February, 1957, shortly after the damages from the overheating of the furnace, Bauer was called by the insured to inspect and repair the furnace. Parenthetically, it may be stated that the automatic controls consisted of a transformer which reduced the electric current to 24 volts, a thermostat, a shut-off valve operated by a motor, and wires leading from the transformer and the thermostat to the shut-off valve. Bauer testified that he found the wiring leading from the valve to the transformer and the thermostat charred very badly and actually fused together. He qualified that statement by saying that part of the wires were shorted and fused together. He made the necessary repairs to the furnace by replacing the transformer, the wiring and the shut-off valve. He stated that if the shut-off valve failed to function, the temperature in the house would rise to 160° to 180°. He gave as his opinion, based on facts stated by him and which afforded a reasonable basis for such opinion, that the valve failed to function because of a short in the wiring running from the thermostat to the shut-off valve. While he was not able to positively exclude all other possible causes, he supported his opinion by cogent facts and reasoning which strongly tended to eliminate any other possible cause.

Mel D. Connett was experienced in the costs of constructing, remodeling and repairing dwelling houses. He testified that in his opinion the market value of the house before the damage occurred was $21,000 and immediately afterwards, $13,000. Before making the repairs, he obtained estimates and he actually spent, in repairing the heat damage, $6,500. The actual cost approximated the estimates he had received from contractors. Damage to the joists and to the floors was not repaired. In some instances there was a resort to patching and the original condition was not fully restored. All of the cracks resulting from the heat were not repaired.

In our opinion, the insurer was not misled by the answers to the interrogatories. Taken in connection with the pleading, they fully advised the insurer that the insured relied upon damage to the wiring as an integral part of the shut-off valve.

■ We are of the opinion that the testimony of Bauer was sufficient to take the case to the jury on the issue of whether there was a sudden and accidental injury to electrical devices, resulting from electrical current artificially generated.

The cause and existence of the damages were established with requisite certainty. It was impossible to establish each item of damage with mathematical certainty.

■ Where the cause and existence of damages has been established with requisite certainty, recovery will not be denied because such damages are difficult to ascertain. While the damages may not be determined by mere speculation or guess, it is enough if the evidence shows the extent of the damages as a matter of just and reasonable inference. A reasonable basis of computation and the best evidence which is obtainable under the circumstances of the case and which will enable the jury to arrive at an approximate estimate of the loss is sufficient.[3]

■ Measured by the above standards, we are of the opinion that the evidence of the plaintiffs was sufficient to

3. Moutain States Tel. & Tel. Co. v. Hinchcliffe, 10 Cir., 204 F.2d 381; Kobe, Inc. v. Dempsey Pump Co., 10 Cir., 198 F.2d 416, 426, 427; Leader Clothing Co. v. Fidelity & Casualty Co. of New York, 10 Cir., 237 F.2d 7, 10.

take the case to the jury on the issue of damages.

█ The parties stipulated that "if there should be any recovery by the plaintiff, interest should be allowed at the rate of six per cent from July 1, 1957." Accordingly, the court properly directed the jury to add interest to any amount found for the plaintiff at the rate of six per cent per annum, from July 1, 1957. No exception was taken to the charge. In view of the foregoing, the insurer may not now question the allowance of interest.

█ The court awarded the insured attorney's fees in the sum of $1,000 as a part of the costs of the action.

Section 40–256, 1957 Supp., General Statutes of Kansas, 1949, in part provides:

> "That in all actions hereafter commenced, in which judgment is rendered against any insurance company * * * on any policy * * of insurance, if it appear from the evidence that such company * * * has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs: * * *."

The insured gave due notice to the insurer of the loss. The insurer at first denied that the loss was within the coverage of the policy. Later, after inspection of the dwelling house, it denied that there was any heat damage. It persisted in the latter contention at the trial and undertook to establish by one witness that there was no heat damage. The contentions that the loss was not covered by the policy and that there was no heat damage were clearly unfounded. The insurer, without admitting liability, did make some offers of compromise, but for amounts much less than the actual loss. We are of the opinion that the court was warranted in concluding that the insurer, without just cause or excuse, refused to pay the full amount of the loss. Accordingly, it is our conclusion that the trial court was warranted in awarding attorney's fees.

Affirmed.