**T. F. SCHOLES, INC., and the United States Fidelity and Guaranty Company, Appellants,**

v.

**UNITED STATES of America for the Use of H. W. MOORE EQUIPMENT COMPANY, Appellee.**

**No. 6650.**

United States Court of Appeals Tenth Circuit.

Sept. 8, 1961.

Clarke W. Karr, Denver, Colo. (John P. Thompson, Denver, Colo., on the brief), for appellants.

John S. Pfeiffer, Denver, Colo. (Louis G. Isaacson, Denver, Colo., and Isaacson, Rosenbaum, Goldberg & Miller, on the brief), for appellee.

Before MURRAH, Chief Judge, and BRATTON and BREITENSTEIN, Circuit Judges.

BRATTON, Circuit Judge.

This was an action under the Miller Act, 49 Stat. 793, as amended, 40 U.S.C. § 270a et seq. The United States instituted the action for the use of H. W. Moore Equipment Company, hereinafter referred to as Moore, to recover from six prime contractors and the sureties on their respective payment bonds for rental, maintenance, repair, and transportation

of a rock crushing unit which was used in connection with the construction of facilities at the United States Air Force Academy in Colorado. T. F. Scholes, Inc., hereinafter referred to as Scholes, was one of the prime contractors; and the United States Fidelity and Guaranty Company was surety on its payment bond. That contractor was to do certain grading, construct certain drainage facilities, and construct certain retaining walls, for which it was to be paid $2,373,586.30. At the outset of the action, recovery was sought against all of the defendants in the sum of $5,711.50, plus reasonable attorneys fees. Settlements were effected before trial as between Moore and all of the defendants except Scholes and the surety on its payment bond. Judgment was entered against those two defendants for $5,177.96, including interest, and including attorneys fees in the sum of $1,000.

■ One ground of attack upon the judgment is that the notice of the claim in suit was not given within the prescribed time. Section 1(a) (2) of the Act, supra, in presently pertinent part requires every prime contractor to furnish a payment bond for the protection of those supplying labor or material in the prosecution of the work provided for in the contract. And section 2(a) vests in anyone who furnished labor or material for such use and has not been paid in full therefor within ninety days after the last labor was performed or the last material was furnished the right to bring suit on the payment bond. But under the section, one without contractual relationship to the prime contractor who furnished labor or supplied material to a subcontractor is required to give to the prime contractor written notice of his claim within ninety days from the date on which such person did or performed the last labor or furnished the last material for which claim is made, stating with substantial accuracy the amount claimed and the name of the party for whom the labor was performed or to whom the material was furnished. Scholes let to Truck Center, Inc., a subcontract to fur-

nish, deliver, and put in place 1,200 tons of bedding material and 80,000 square yards of sub-base material. It was necessary for Truck Center to secure the use of a rock crushing unit in processing the material called for in the subcontract. Moore leased to Truck Center on a cash rental basis the crushing unit previously referred to. In addition to paying the cash rental, Truck Center was obligated at its expense to keep the property in good order and state of repair. And by provision in the lease agreement, Truck Center was expressly obligated further to pay reasonable attorneys fees incurred by Moore in enforcing the agreement, or in collecting the rental provided for therein. Truck Center used the crusher in processing the material which it furnished to Scholes, and it also used the crusher in processing and furnishing material to other prime contractors at the Academy. The crusher was delivered to the site of the Academy on November 8, 1957, and remained there until February 5, 1958, available for use in processing and furnishing material to prime contractors. And there was evidence that the work done by Truck Center for Scholes was stopped the latter part of January. The witness giving such testimony stated at one juncture that he would say it was stopped near the 20th. The notice was dated April 18, and reached Scholes in due course of mail at Reading, Pennsylvania. Considered in its totality, the evidence was sufficient to make a prima facie showing that the notice was given within ninety days after Truck Center furnished the last material to Scholes, and that met the exaction of the statute in respect to the time of giving the notice.

■■ The judgment is challenged on the further ground that the notice was insufficient in substance. The notice was in the form of a letter to Scholes. It was stated in the letter that on February 5, 1958, Moore ceased to extend availability of the crushing unit for use on certain subcontracts at the Academy. It was further stated "Based on this date, within the statutory provisions of the Miller Act,

this letter is to serve as your notice that charges for parts, service and rental billed to the account of Truck Center, Inc., remain unpaid in the amount of $5,-724.50. We are aware that these charges will not necessarily be the responsibility of any one prime contractor and its surety, but we are agreeable to negotiating a reasonable breakdown between jobs performed during the time that parts, service and rental were furnished by this firm to the named subcontractor." Where one having no contractual relationship with the prime contractor furnishes material or performs labor for a subcontractor, the giving of the written notice to the prime contractor within the specified time is a condition precedent to the right to maintain an action on the payment bond. Fleisher Engineering & Construction Co. v. United States, 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. 12; Cooley v. Barten & Wood, Inc., 1 Cir., 249 F.2d 912. But the primary purpose of the Act is to protect those who furnish labor or supply material for use in the construction of public buildings or public works of the United States, and that being its remedial purpose it should be given a liberal construction in the effectuation of such purpose. MacEvoy Co. v. United States, 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163; Commercial Standard Insurance Co. v. United States, 10 Cir., 213 F.2d 106; St. Paul-Mercury Indemnity Co. v. United States, 10 Cir., 238 F.2d 917.

▮ Not having any contractual relationship with Scholes, the giving to Scholes a written notice of the claim against Truck Center was a condition precedent to the right to maintain this action. But the statute does not require any particular form of notice. The notice given to Scholes was not a model for substance or completeness. But it did state in substance that Moore leased the rock crushing unit to Truck Center for use in connection with fulfillment of government contracts at the Academy. It did state in substance that the crusher had been used in processing material which Scholes and other prime contractors used in the work under their respective contracts. It did state that the unpaid balance which Truck Center owed Moore was $5,724.50. It did state in substance that Moore asserted a claim in that total amount against the several prime contractors and their respective sureties, including Scholes and its surety. And it did make clear that Moore was seeking to reach Scholes and other prime contractors and the sureties on their respective payment bonds for payment of the claim in that amount. While it disclosed an awareness on the part of Moore that possibly no one prime contractor was liable for the entire amount, and it expressed a willingness on the part of Moore to negotiate with the prime contractors respecting an allocation of the total liability among the several prime contractors, we think that under the circumstances it met in fair measure the requirements of the statute in respect to substance. McWaters and Bartlett v. United States, 10 Cir., 272 F.2d 291.

▮ The substance of a further challenge to the judgment is that it rests upon speculation and conjecture; that there was no tangible basis on which to award recovery in favor of Moore in any sum; and that there was no evidence from which the court could ascertain the amount for which recovery should be awarded against Scholes and the surety on its payment bond. Recovery of monetary reparation cannot be predicated upon speculation or conjecture. Plaintiff may not recover in terms of money where it is uncertain as to whether his rights have been infringed in the form of breach of contract, in the form of tort, or in some other comparable form. But it is not essential in every case that plaintiff prove with absolute certainty the amount to which he is entitled. Monetary reparation may be awarded where there is no uncertainty as to whether the rights of plaintiff have been invaded, even though there may be some uncertainty respecting the amount of recovery which should be awarded. It is enough if the evidence adduced establishes with certainty that the rights of plaintiff have been infringed and is sufficient to enable the court or jury, as the case may be, to make a fair

and reasonable approximation of the amount of reparation which should be awarded. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544; Hedrick v. Perry, 10 Cir., 102 F.2d 802; Kobe, Inc. v. Dempsey Pump Co., 10 Cir., 198 F.2d 416, certiorari denied 344 U.S. 837, 73 S.Ct. 46, 97 L.Ed. 651; Mountain States Telephone and Telegraph Co. v. Hinchcliffe, 10 Cir., 204 F.2d 381; United States v. Griffith, Gornall & Carman, 10 Cir., 210 F.2d 11; Stern v. Dunlap Co., 10 Cir., 228 F.2d 939; Robert E. McKee General Contractor, Inc. v. Insurance Co. of North America, 10 Cir., 269 F.2d 195; Vanguard Insurance Co. v. Connett, 10 Cir., 270 F.2d 868.

■ There was no uncertainty in this case respecting infringement of the rights of Moore which entitled it to monetary reparation. The evidence disclosed with certainty that Scholes as principal and the surety company as surety executed the payment bond; that the subcontract was let to Truck Center; that Moore leased the crusher unit to Truck Center for use in processing material at the Academy; that Truck Center used the crusher in processing materials for Scholes and other prime contractors; and that Truck Center defaulted in its obligations to Moore. The only uncertainty related to the apportionment to Scholes and its surety the proper portion of the unpaid balance which Truck Center owed Moore. While the evidence was not entirely satisfactory, we are unable to say that it failed to furnish a basis upon which to make a fair and reasonable approximation of the amount which should be apportioned to Scholes and the surety on its bond.

■■ The remaining question relates to the allowance of attorneys fees of $1,000. The fixing of reasonable attorneys fees rested in the sound judicial discretion of the court and the amount fixed was well within the range of such discretion. A motion has been lodged in this court for the allowance of additional fees for services rendered in representing Moore on appeal. In the exercise of our sound judicial discretion, additional fees in the sum of $500 for such service are allowed.

The judgment is modified by increasing the amount thereof to $5,677.96, the increase representing the attorneys fees allowed in this court; and as modified the judgment is affirmed.