FRANK BRISCOE COMPANY, Inc. and
Maryland Casualty Company,
Appellants,

v.

UNITED STATES of America, for the
Use and Benefit of WESTERN STATES
MACHINERY Co., Appellee.

UNITED STATES of America, for the
Use and Benefit of WESTERN STATES
MACHINERY CO., Cross-Appellant,

v.

FRANK BRISCOE COMPANY, Inc. and
Maryland Casualty Company,
Cross-Appellees.

Nos. 9416, 9394.

United States Court of Appeals
Tenth Circuit.

July 2, 1968.

Hugh J. McClearn, Denver, Colo.
(Clanahan, Tanner, Downing & Knowl-
ton, Denver, Colo., on the briefs), for
appellants and cross-appellees.

Dwight K. Shellman, Denver, Colo.
(Holland & Hart, and Michael J. Eige-
man, Denver, Colo., on the briefs), for
appellee and cross-appellant.

Before PICKETT, SETH and HICK-
EY, Circuit Judges.

SETH, Circuit Judge.

Western States had rented construc-
tion equipment to a subcontractor work-
ing on a Government project in Colora-
do, and brought this action under the
Miller Act (40 U.S.C. §§ 270a, 270b)
against the prime contractor and his
surety for the unpaid rental. Judgment
was rendered for the use plaintiff. On
appeal the sole issue is whether the use
plaintiff had given notice of its claim to
the prime contractor within the ninety-
day notice period prescribed by the Mill-
er Act.

One of the items rented to the subcontractor by the use plaintiff and of principal concern here was a cement mixer which remained at the jobsite from the inception of the project in June 1963 until February 11, 1965. The use plaintiff billed the subcontractor for its rental monthly for the period from June 1963 to and including September 1963; however, no payments were made, and the subcontractor informed the plaintiff that no money would be coming from the subcontract until the job was completed. Upon learning this the plaintiff no longer sent monthly billings to the subcontractor. The plaintiff later attempted to have the prime contractor make payments to the subcontractor on the subcontract.

Early in September 1964 the prime contractor, Frank Briscoe Company, Inc., terminated the subcontract and thereafter completed the work itself. Neither the prime contractor nor the subcontractor notified plaintiff that the prime contractor had taken over the work. It does not appear that plaintiff actively sought, during the period from September 1963 to February 11, 1965, to learn the whereabouts of its equipment or whether or not the cement mixer was being used. All that appears in this regard is that plaintiff attempted to secure from the appellant in December 1963 payments on account due to the subcontractor. The record also shows an interoffice memorandum dated December 1, 1964, by appellant indicating that it had knowledge of plaintiff's claim against the subcontractor. Plaintiff, however, makes no claim that appellant had notice previous to April 14, 1965, and the trial court made no finding in this regard.

The trial court found that the cement mixer was physically present on the jobsite until February 11, 1965, and it concluded that it was available for use on the job within the meaning of the Miller Act until February 11, 1965. It found that proper notice was given within the ninety-day period. The trial court awarded a judgment of $5,599.76 which included rental for the cement mixer only for the period from the inception of the rental until September 1963, and refused to award the use plaintiff rentals that allegedly accrued thereon from October 1963 through February 11, 1965. Plaintiff cross-appeals from the amount of judgment awarded.

Although the trial court found that plaintiff was not diligent in failing to make a detailed investigation of the status of the concrete mixer, and ultimately in failing to learn of the fact of termination of the subcontract, the trial court apparently felt that prime contractor's failure to notify plaintiff of the termination of the subcontract and the presence and probable use of the cement mixer by the prime contractor relieved plaintiff of the duty to ascertain the fact of termination of the subcontract. Thus the trial court found that the ninety-day period began to run at the date the cement mixer was physically returned to plaintiff.

The question here presented is whether the ninety-day notice period commenced to run at the date of termination of the subcontract, September 2, 1964, or instead on February 11, 1965, the last day the cement mixer was physically present on the jobsite. We hold that the notice period commenced when the subcontract was terminated. This severed any relationship which the prime contractor had with any party to the equipment rental arrangement. If the plaintiff had exercised proper diligence it would have found that the contractor to whom it furnished the equipment no longer was on the job, and could have submitted its claim or taken other action. The notice period is for the protection of the prime contractor. United States for Use and Benefit of J. A. Edwards & Co. v. Peter Reiss Construction Co., 273 F.2d 880 (2d Cir.); Coffee v. United States, for Use and Benefit of Gordon, 157 F.2d 968 (5th Cir.).

Plaintiff urges that the presence of the equipment on the jobsite was significant, as was its availability to the prime contractor for its use. However,

these factors do not serve to alter the purpose of the notice period. Our holding in T. F. Scholes, Inc. v. United States for Use of H. W. Moore Equipment Co., 295 F.2d 366 (10th Cir.), was that the evidence established that the rental equipment was actually used by the subcontractor himself within the period, and we did not discuss the situation presented in the case at bar.

■ The plaintiff urges and cites Fourt v. United States for Use of Westinghouse Elec. Supply Co., 235 F.2d 433 (10th Cir.), for the proposition that the supplier need not show actual constant use of the rental equipment on the particular project as a prerequisite to a Miller Act claim. However, this is not necessarily the answer. If plaintiff could show that the prime contractor had used the cement mixer, it would have a claim for the reasonable value of the use; however, this would not serve to extend the notice period. The ninety-day notice is a condition precedent to suit on a claim and serves to protect the prime contractor in the typical situation where he has no contractual relationship with the supplier. Roane v. United States Fidelity & Guaranty Co., 378 F. 2d 40 (10th Cir.). See also Bowden v. United States for Use of Malloy, 239 F. 2d 572 (9th Cir., 1956). Also the equipment was not necessarily available legally to the prime contractor. United States for Use and Benefit of Miller & Bentley Equip. Co. v. Kelley, 327 F.2d 590 (9th Cir.); United States to use of Marlin v. F. D. Rich Co., 199 F.Supp. 939 (N.D.Fla.).

Plaintiff cites Apache Powder Co. v. Ashton Co., 264 F.2d 417 (9th Cir., 1959), for the proposition that a substitution of a subcontractor will not commence the running of the ninety-day notice period unless the supplier was notified of the substitution. That case involved a substitution of subcontractors to the subcontract. The supplier furnished materials to subcontractors before and after the substitution. It appears, however, that the substitution was in form only and that the supplier dealt with the same personnel throughout the period of the subcontract. The Court of Appeals for the Ninth Circuit held that the evidence disclosed that the supplier was warranted in treating the supplies furnished to both subcontractors as one account and that therefore the supplier gave the prime contractor sufficient and timely written notice of such claim. See Noland Co. v. Allied Contractors, Inc., 273 F.2d 917 (4th Cir., 1959). The distinguishing fact in *Apache Powder* is that the supplier furnished material to both subcontractors on a contractual basis and that it dealt with each subcontractor as the same entity. In the case at bar plaintiff never dealt with the prime contractor directly, as its rental contract was only with the subcontractor. When the subcontract was terminated, it was merely fortuitous that the cement mixer was left at the jobsite, or remained by reason of plaintiff's lack of diligence in keeping up with the job. Certainly it was not by reason of any acts of the prime contractor.

■■ We must hold that the notice period began when the contractor with whom plaintiff had its rental agreement, and the only one to whom it furnished the equipment, was no longer connected with the work. Otherwise the notice period would be extended by the mere presence of such equipment on the jobsite long after any party with whom the prime contractor had any contractual relation had departed. The failure of the parties to the rental agreement to terminate it, and to redeliver the machinery, without more should not extend the notice period as against the prime contractor. This is not in accordance with the purpose of the Act.

Reversed.