BOSTON SECURITIES, INC., a corporation, Plaintiff,

v.

UNITED BONDING INSURANCE COMPANY, a corporation, Defendant and Third-Party Plaintiff,

v.

Bruce L. YATES, an individual, Third-Party Defendant.

No. 67 C 316(2).

United States District Court,
E. D. Missouri, E. D.

Feb. 11, 1970.

---◆---

Mortimer A. Rosecan, St. Louis, Mo., for plaintiff.

Francis L. Kenney, Jr., Kenney, Reinert & Hespen, St. Louis, Mo., for United Bonding Ins. Co.

Richard D. FitzGibbon, St. Louis, Mo., for Bruce L. Yates.

## MEMORANDUM

MEREDITH, District Judge.

This case was tried to the Court without a jury. It is a suit on fidelity bond

issued by United Bonding Insurance Company to Boston Securities, Inc., to cover any losses of Boston Securities sustained through the fraud or dishonesty of its employees. United Bonding has joined Bruce L. Yates, the allegedly dishonest employee, as a third-party defendant. Boston Securities, the plaintiff, is a Missouri corporation, with its principal place of business in St. Louis, Missouri, and the defendant and third-party plaintiff, United Bonding, is incorporated under the laws of Indiana, with its principal place of business in that state. Bruce L. Yates is a citizen of Missouri. The Court has jurisdiction by virtue of diversity of citizenship and an amount in controversy in excess of $10,000.00.

Boston Securities' complaint alleges that Bruce L. Yates engaged in dealings and activities that were dishonest within the meaning of the bond and that it suffered losses by reason of these dealings and activities. Yates was employed by Boston Securities in June of 1964. He was made manager of Boston Securities' Delmar Office in mid-summer of 1964. Yates was an experienced small-loan business operator and worked closely with the owner, Mr. Perlmutter, and the special consultant, Mr. William Royall. Yates was discharged on September 13, 1966.

United Bonding executed the bond in favor of Boston Securities in the amount of $50,000.00, the coverage beginning October 1, 1965. The bond provided, in part:

"THE LOSSES COVERED BY THIS BOND ARE AS FOLLOWS:

Fidelity Insuring Clause

(A) Any loss of money or other property, including Property as defined herein, belonging to the Insured, or in which the Insured has a pecuniary interest, or for which the Insured is legally liable, or held by the Insured in any capacity whether the Insured is legally liable therefor or not, through any dishonest or fraudulent act, wherever committed, of any of the Employees, whether acting alone or in collusion with others."

■ The first issue in the case is whether the activities of Yates were dishonest or fraudulent within the meaning of the policy. Fidelity bonds indemnifying employers against dishonest acts of their employees are to be construed broadly, however, negligence, no matter how great, is not dishonesty, Citizens' Acceptance Corp. v. New Amsterdam Cas. Co., 32 F.R.D. 600 (D.Del.1963). In this context a person can be dishonest and have his actions fall short of being criminal, the appeal being to the mores instead of statutes and legal words of art. World Exchange Bank v. Commercial Cas. Ins. Co., 255 N.Y. 1, 173 N.E. 902 (1930). Some type of intent to cause harm or receive personal profit is probably necessary. Universal Credit Co. v. United States Guarantee Co., 321 Pa. 209, 183 A. 806 (1936). However, there is authority that the level of intent does not have to reach that high. Mortgage Corp. of New Jersey v. Aetna Cas. & Sur. Co., 19 N.J. 30, 115 A.2d 43 (1955).

"The word 'dishonesty' is to be given a broad significance and includes any acts done in breach of the officer's duty to the bank and any wilful omissions to discharge the duties of his office. It does not embrace mere carelessness or negligence in the discharge of duty, but does include any acts done in violation of the officer's obligation to faithfully perform the duties of his office, whether such acts be criminal or not." Fidelity & Deposit Co. of Maryland v. Bates, 76 F.2d 160, 171 (8th Cir. 1935).

■ After reviewing the evidence in the case and applying the above-stated principals, it is the opinion of the Court that Yates was dishonest. There are several activities of Yates that, when studied alone, would indicate dishonesty. When these activities are considered together, they indicate an intentional

course of action to profit personally and to disregard the interests of his employer.

Yates' dealings with August Sansone are the first in the series of suspect transactions. Sansone was an employee of Boston Securities who did collection work, skip tracing, and repossessing. Sansone used several aliases in his work. (Yates testified that Sansone wanted to use an alias; Sansone testified that he did it at Yates' request.) He was paid a flat fee or by the hour, but was never on straight salary. Yates made Sansone's pay checks in either Sansone's real name or one of his aliases. Yates would then endorse the payee's name on the check and cash it. He later paid Sansone in cash. Sansone testified that his tax returns and records had been stolen and that he did not remember how much Boston Securities paid him. Yates also allowed Sansone to collect moneys without using a receipt book, a practice he had been told not to allow.

Yates received finder's fees from certain dealers. In 1966 he reported $3,200 in such fees on his federal income tax return. His 1964 and 1965 tax returns were not available, because, according to Yates, they were being checked by the Internal Revenue Service. Yates testified that the finder's fees occurred only when he felt Boston Securities should not make the loan. If a customer or a good risk came into the office and wanted a loan and had to be referred to a place where he could purchase the merchandise he desired, Yates would refer him and make the loan. He claims he received no kickback on these loans. However, if the risk looked bad and he felt Boston Securities should not make the loan, then he would refer the purchaser to a favored dealer. If the dealer made a sale and disposed of the paper elsewhere, then Yates would receive a finder's fee. William Royall, a special consultant on the small loan business to Boston Securities, testified that finder's fees were not commonly used in the small loan business and that most companies forbade receipt of them. If Yates re-

ceived a fee only where Boston Securities did not make a loan, then he may have disregarded the best interests of his employer. However, if Yates received a fee where Boston Securities made the loan, then his actions were clearly dishonest.

It is the opinion of the Court that there was a connection between the kickbacks or finder's fees and loans made to customers of certain dealers. The testimony and exhibits show that Yates recopied loan information from the original loan application. The information on these original applications was received in Boston Securities' office by telephone from credit services or employers. It was recorded on the cards by someone other than Yates. It is not customary for anyone, much less the manager, to recopy the information on another card. In many instances the information copied by Yates varied from the information received from the credit services and recorded originally. In nearly all of these cases, the information recorded by Yates made the applicant appear to be a better credit risk than the original information. Most of these loans were made to customers of one of several dealers—Michael Motors, Mid-County Motors, or Towne House or Don Deal Furniture—who dealt with Boston Securities exclusively through Yates. A high percentage of the loans with altered applications made to customers of these dealers eventually went bad and Boston Securities sustained a loss. Leonard Berin of Michael Motors and Robert Huffman of Mid-County Motors invoked the Fifth Amendment privilege against self-incrimination and refused to testify in this case. Robert Metrillious of Mid-County Motors refused to answer questions at deposition and could not be found to testify at trial. Don Deal testified, but remembered little because of an alleged alcoholic condition at the time in question. The testimony also indicates that Yates made loans to customers of these dealers without a credit check or to recent bankrupts, both of which were against Boston Securities' policies. At the very least, this course of action

shows an intentional disregard of the well-being of the employer. Examined in light of Yates' admission of accepting finder's fees, the conclusion that Yates was making a personal profit is inescapable. This is supported by the fact that he could not remember financial data, could not produce records because they were destroyed by a tornado or tax returns because the Internal Revenue Service had them.

There was considerable testimony that Yates endorsed checks made payable to borrowers by signing the borrowers' names and had them cashed at the bank and at the office. He stated this was for the convenience of the borrowers to give them cash. There was evidence that Yates signed the names of borrowers to loan applications and notes. He stated this was for the convenience of the loan company. Such practice may very well be criminal acts.

■■ Having found that Yates' actions were dishonest within the meaning of the policy, the Court must consider damages. When it is once established with certainty that a loss covered by the policy has occurred, it is not necessary to a recovery that the amount must be proved with mathematical accuracy, where that is impossible. Leader Clothing Co. v. Fidelity & Cas. Co. of New York, 237 F.2d 7, 10 (10th Cir. 1956). Where the amount of damages is difficult to ascertain, it would be a perversion of justice to deny all relief to the injured person under such circumstances, Id. at 11. In this case, the Court has determined that Yates was dishonest within the meaning of the bond. It is further the opinion of the Court that this is a case where damages cannot be proven with mathematical accuracy. However, there must be something in the record to support any finding. The Court has reviewed the record thoroughly and has found the loss to Boston Securities to be $17,700.45 and a judgment will be entered in that amount, plus interest at six percent per annum from March 8, 1967, which is three months after proof of loss was furnished.

The first items of damages are the checks issued to Sansone by Yates. The Court has already found that Yates' action in this regard was dishonest. The problem in this instance is placing a dollar value on the loss sustained by Boston Securities. It is clear that Sansone was doing some work for Boston Securities. Boston Securities has presented little evidence to show its losses from these activities. The checks issued to Sansone total $5,386.46. His replacement was paid $400 per month or $4,800 per year The judgment includes the difference between these two figures, or $586.46.

Another item included in the judgment is the $3,200 in finder's fees. There may have been other finder's fees or kickbacks involved, but the record does not contain sufficient evidence to establish a dollar value on Boston Securities' loss as a result of these.

The final items of damages are the previously discussed loans on which credit was falsified or on which there was a clear disregard of the best interest of the employer. The net loss on these loans (as set out in plaintiff's exhibit 75) is $13,913.99. Upon payment of the judgment, United Bonding will be subrogated to the rights of Boston Securities with respect to the above-mentioned loans. Avis, Inc. v. Charmatz, 208 F. Supp. 932 (E.D.Mo.1962).

Boston Securities has made no proof warranting any recovery under Count II of its complaint because of alleged vexatious refusal to pay under 375.420 R.S. Mo.1959, V.A.M.S., and judgment will be entered in favor of United Bonding on this count.

In the third-party complaint of United Bonding against the third-party defendant Yates, the Court will enter a judgment in favor of United Bonding equal to the amount of the claim United Bonding pays Boston Securities.

The foregoing memorandum is adopted as the Court's findings of fact and conclusions of law.