MISSOURI PACIFIC RAILROAD
COMPANY, Plaintiff–Appellee,

v.

KANSAS GAS AND ELECTRIC COM-
PANY, Defendant–Appellant.

No. 87–1103.

United States Court of Appeals,
Tenth Circuit.

Dec. 1, 1988.

Phillip R. Fields, of Gott, Young & Bogle, P.A., Wichita, Kan., for plaintiff-appellee.

J. Michael Peters (Ralph Foster with him on the brief), Wichita, Kan., for defendant-appellant.

Before McKAY, LOGAN and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, "a railroad has the nondelegable duty to provide its employees with a safe place to work even when they are required to go onto the premises of a third party over which the railroad has no control." *Shenker v. Baltimore & Ohio R.R. Co.*, 374 U.S. 1, 7, 83 S.Ct. 1667, 1671, 10 L.Ed.2d 709 (1963). Therefore, as a condition to furnishing rail service to the premises of defendant-appellant, Kansas Gas and Electric (KG & E), plaintiff-appellee, Missouri Pacific Railroad (MoPac), required a guarantee of indemnity against loss for injuries its employees sustained while working on KG & E's property. The result was an Industrial Track Agreement (ITA). In exchange for MoPac's promise to provide service on tracks running into the construction site of the Wolf Creek Generating Station near Aliceville, Kansas, KG & E agreed to maintain safe working conditions at the location or indemnify MoPac for damages arising from its failure to do so. Paragraph three of the ITA provided:

Shipper [KG & E] shall not ... allow to be placed or stored ... [an] obstruction of any kind, over or adjacent to Switch [the tracks].... Shipper assumes full responsibility for, and shall defend, indemnify and save harmless the Carrier [MoPac] from and against, any and all liability, suits, claims, damages, costs (including attorneys' fees), losses, outlays and expenses in any manner caused by, arising out of or connected with the failure or refusal of Shipper to comply with, observe or perform any of the provisions of this Paragraph 3, notwithstanding any possible negligence (whether sole, con-

current or otherwise) on the part of Carrier, its agents or employes.

On August 24, 1983, a MoPac locomotive derailed on the spur or sidetrack leading into the generating station after KG & E had constructed a temporary crossing over the rail with dirt and rock in violation of the ITA. The next day, a MoPac employee, William Cole, hurt his back while attempting to re-rail the engine. Cole was assisting in the placement of a 300 pound hydraulic jack beside the engine when he slipped and fell. He sustained permanent injury and was unable to return to work for MoPac.

In view of its potential FELA liability, MoPac proceeded to negotiate with Cole. Although MoPac demanded that KG & E fulfill its duty under the ITA and participate in the negotiations, KG & E refused. MoPac paid Cole, who was represented by counsel, $225,000 in settlement of his claim on November 29, 1984. The same day, Cole executed a release discharging both MoPac and KG & E from any liability resulting from his accident, although KG & E did not contribute to the final settlement.

 MoPac thereafter instituted this diversity action pursuant to 28 U.S.C. § 1332 seeking indemnity from KG & E under paragraph three of the ITA. On cross motions for summary judgment, the district court, applying Kansas law,[1] held that (1) KG & E's temporary crossing had prompted Cole's injury within the meaning of the contract, (2) the amount of MoPac's settlement with Cole was reasonable, and (3) MoPac was entitled to recover 10% prejudgment interest as well as reasonable attorneys' fees. KG & E appeals from the final judgment entered in favor of MoPac for $225,000, plus 10% interest per year from November 29, 1984, and $4,263.75 in attorneys' fees. We affirm.

## Standard of Review

This court considers the grant or denial of a summary judgment motion under the same standard employed by the district court. *Gray v. Phillips Petroleum Co.,* 858 F.2d 610, 613 (10th Cir.1988). Because a ruling on the motion involves purely legal determinations, our review is *de novo. Goichman v. Aspen,* 859 F.2d 1466, 1467, (10th Cir.1988).

Under Fed.R.Civ.P. 56(c), summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether a genuine issue of material fact exists, we undoubtedly must view the evidence in a light most favorable to the party opposing the motion. *McKenzie v. Mercy Hosp.,* 854 F.2d 365, 367 (10th Cir.1988). But the rule is also well established that the mere existence of *some* factual dispute will not frustrate an otherwise proper summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Thus, considering the evidence "through the prism of the substantive evidentiary burden," *id.* at 254, 106 S.Ct. at 2513, the court must determine "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed." *Improvement Co. v. Munson,* 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867 (1872). *Accord Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

---

1. In this diversity action, we must apply the substantive law that the Kansas state courts would apply, including its choice of law rules. *Robert A. Wachsler, Inc. v. Florafax Int'l, Inc.,* 778 F.2d 547, 549 (10th Cir.1985). In Kansas, the doctrine of *lex loci contractus* directs us to construe the ITA in accordance with the law of the state where the contract was made. *Simms v. Metropolitan Life Ins. Co.,* 9 Kan.App.2d 640,

685 P.2d 321, 324 (1984). The record, however, does not indicate where the final act necessary for formation of the ITA occurred, and the parties do not raise the issue. Therefore, we shall apply, as did the district court, the substantive law of Kansas to MoPac's claims. *See Leader Clothing Co. v. Fidelity and Casualty Co.,* 237 F.2d 7, 12 (10th Cir.1956); *Connolly v. Samuelson,* 671 F.Supp. 1312, 1315 (D.Kan.1987).

Further, it is important to note that "cross-motions for summary judgment do not automatically empower the court to dispense with the determination whether questions of material fact exist." *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt,* 700 F.2d 341, 349 (7th Cir.), *cert. denied,* 464 U.S. 805, 104 S.Ct. 53, 78 L.Ed.2d 72 (1983). They require no less careful scrutiny than an individual motion. We must be convinced in all instances that the issues before us may be resolved as a matter of law. Mindful of this standard, we now turn to an analysis of this case.

### I.

KG & E acknowledges that its failure to clear the track of debris from the temporary crossing constituted a breach of the ITA's provision directing it not to place any obstruction over the track.[2] Rec. vol. II at 4. Nevertheless, KG & E contends the district court erred in concluding as a matter of law that a sufficient causal connection existed between the breach of this obligation and the injury to Cole which allowed MoPac to invoke the indemnity provisions of paragraph three. KG & E argues that, at the very least, the language of paragraph three is ambiguous as to the scope of the intended coverage, and should therefore be construed by a jury.

In Kansas, the interpretation of an unambiguous contract is a judicial function. *Hall v. Mullen,* 234 Kan. 1031, 678 P.2d 169, 174 (1984). The initial determination of whether a contract provision is ambiguous is likewise a question of law. *McBride Elec., Inc. v. Putt's Tuff, Inc.,* 9 Kan.App.2d 548, 685 P.2d 316, 321 (1984). "When the intent of the parties to a contract is clearly ascertainable by construing the document from its four corners it is not considered ambiguous; although some terms may be conflicting, extrinsic evidence is inadmissible and rules of construction applicable to ambiguous contracts do not apply." *Brown v. Lang,* 234 Kan. 610,

675 P.2d 842, 846 (1984). *Accord Stauth v. Brown,* 241 Kan. 1, 734 P.2d 1063, 1069 (1987).

We agree with the district court that the ITA is plain, unambiguous, and properly construed as a matter of law. KG & E's assertion that MoPac must show something akin to proximate cause before it is entitled to indemnification simply is not supported by the language of paragraph three. KG & E agreed to indemnify MoPac for any claim "in any manner caused by, arising out of or connected with" the failure of KG & E to keep the track clear of obstructions. *See Pestock v. State Farm Auto. Ins. Co.,* 9 Kan.App.2d 188, 674 P.2d 1062, 1063 (1984) (phrase "arising out of" imparts a more liberal concept of causation than proximate cause); *Fontenot v. Mesa Petroleum Co.,* 791 F.2d 1207, 1214 (5th Cir.1986) (language "arising in connection herewith" contained in indemnity agreement unambiguously encompasses all activities reasonably incident to or anticipated by principal activity of contract). The contract clearly expresses KG & E's intention to protect MoPac from liability associated with the unsafe working conditions at the generating station.

KG & E's contention that nothing it did or failed to do made the area unsafe for Cole is wholly without merit. A train wreck inevitably creates hazardous working conditions. KG & E even admits that re-railing a train engine is a dangerous undertaking. Appellant's Brief at 31–32. Cole's injury certainly "arose out of" and was "connected with" KG & E's failure to clear the track of the debris which led to the derailment.

We are also not persuaded by KG & E's argument that because MoPac propounded the ITA, the agreement should be construed against MoPac. Doubtful language in a contract admittedly is construed against the party preparing the instrument. *Wood River Pipeline Co. v. Willbros Energy Serv. Co.,* 241 Kan. 580, 738 P.2d 866,

2. KG & E does not challenge on appeal the validity of the ITA's indemnity provisions. Such agreements are fully enforceable under

Kansas law. *See Bartlett v. Davis Corp.,* 219 Kan. 148, 547 P.2d 800, 807–10 (1976).

871 (1987). But as already explained, the language of the ITA is not doubtful. Moreover, the agreement was bargained for by two sophisticated corporations, each acting through experienced persons. Consequently, the fact that MoPac drafted the ITA carries no particular significance. *Id.* 738 P.2d at 872.[3]

## II.

■ KG & E next challenges the district court's conclusion that MoPac's settlement with Cole was reasonable. Where an indemnitor denies liability and refuses to assume the defense of a claim under a contract of indemnity, the indemnitee, without waiving its rights, may enter into a good faith, reasonable and prudent settlement with the claimant. *Chicago, R.I. & P.R. Co. v. Dobry Flour Mills, Inc.,* 211 F.2d 785, 788 (10th Cir.), *cert. denied,* 348 U.S. 832, 75 S.Ct. 55, 99 L.Ed. 656 (1954). Proof of absolute legal liability or the actual amount of damages is not necessary in a subsequent action for recovery against the indemnitor. *Burlington Northern, Inc. v. Hughes Bros., Inc.,* 671 F.2d 279, 283 (8th Cir.1982). Rather, the indemnitee "need only prove its potential liability, a relatively simple showing under the strict FELA standards, and that the settlement amount was *reasonably related* to its employee's injuries." *Id.* (emphasis in original). "A contrary rule would make the right to settle meaningless in cases where the indemnitor has denied liability." *Chicago, R.I.,* 211 F.2d at 788.

■ KG & E correctly notes that whether a settlement is reasonable and made in good faith is generally a question of fact for the jury. *See Illinois Central Gulf R.R. Co. v. International Paper Co.,* 824 F.2d 403, 405–06 (5th Cir.1987). But no triable issue of fact is present if the evidence in the record is insufficient to support a verdict for the party opposing a motion for summary judgment.

*Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510 (citing *First National Bank v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)). Although KG & E baldly asserts that the settlement was unreasonable, there is little evidence in the record to substantiate such a proposition.

■ KG & E first attacks the settlement on the basis that MoPac was probably not liable to Cole under the FELA. KG & E, however, ignores MoPac's obligation in assessing potential liability to consider its nondelegable duty to provide Cole with a safe work place even on property over which the railroad has no control. *Shenker,* 374 U.S. at 7, 83 S.Ct. at 1671. The FELA strips the employer of its common-law defenses: "[F]or practical purposes the inquiry in these [FELA] cases today rarely presents more than the single question whether negligence of the employer played any part, *however small,* in the injury ... which is the subject of the suit." *Rogers v. Missouri Pacific R.R. Co.,* 352 U.S. 500, 508, 77 S.Ct. 443, 449, 1 L.Ed.2d 493 (1957) (emphasis added). In view of this standard, MoPac did not improperly or in bad faith settle with Cole. Cole's case against MoPac could have rested entirely on circumstantial evidence and still have been sufficient to reach the jury under the FELA. *Id.* MoPac rightfully settled Cole's claim.

■ KG & E's complaints as to the amount of the settlement are also unavailing. The litigants stipulated that Cole's injury is permanent. Rec. vol. I at doc. 13. He will never return to work for MoPac. KG & E has not contradicted Cole's deposition testimony that he sustained serious disk injury resulting in a chemical injection to dissolve the disk. The award of $225,000, when considering the proper discount rate, will provide Cole an annuity over his remaining work life, each payment approxi-

---

**3.** In the alternative, KG & E maintains that under paragraph seven of the ITA, it is, at most, liable only for one-half the settlement amount. We disagree. Paragraph seven states that "except as otherwise provided in this agreement," any claim arising from the parties' joint negli-

gence shall be borne by them equally. Assuming that MoPac's negligence played a part in Cole's injury, paragraph three directs KG & E to indemnify MoPac despite such negligence where the claim arises out of KG & E's failure to preserve the track.

mately equal to 90% of his average monthly income at the time of his injury. Accounting not only for Cole's salary, but also his pain and suffering, and the costs and fees MoPac saved in settling the claim, we cannot state that the district court erred in finding the settlement reasonable as a matter of law.

Moreover, we note that KG & E was given the opportunity to defend MoPac or participate in the settlement negotiations. But it declined to do either, and instead left MoPac to fend for itself. MoPac subsequently negotiated a prudent settlement. For us now to tell MoPac that its settlement may have been unwise would discourage compromise in all but the most egregious cases governed by an industrial track agreement.

### III.

Finally, KG & E contends the district court improperly awarded MoPac prejudgment interest of 10% from the date of the settlement, and attorneys' fees in the amount of $4,263.75. The propriety of prejudgment interest turns upon Kan.Stat. Ann. § 16–201 (1981), while the question of fees depends upon the terms of the ITA.

In Kansas, interest is recoverable on liquidated claims. *See Leader Clothing Co. v. Fidelity and Casualty Co.*, 237 F.2d 7, 12 (10th Cir.1956). Section 16–201 states that "[c]reditors shall be allowed to receive interest at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due ... from the day of liquidating the account and ascertaining the balance." Kan.Stat.Ann. § 16–201 (1981). The Kansas Supreme Court has defined a liquidated claim as follows:

A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain.... Where an amount is due upon a contract, either express or implied, and there is no uncertainty as to the amount which is due or the date on which it becomes due, the creditor is entitled to recover interest from the due date.

*Equity Investors, Inc. v. Academy Ins. Group, Inc.*, 229 Kan. 456, 229 Kan. 668, 625 P.2d 466, 468–69 (1981) (quoting *First Nat'l Bank v. Bankers Dispatch Corp.*, 221 Kan. 528, 562 P.2d 32, 40 (1977)).

In this instance, the district court correctly held that KG & E was liable for 10% interest from the date of the settlement. Despite KG & E's contrary assertions, the mere presence of this lawsuit does not make the amount due and owing MoPac unliquidated or unascertainable within the meaning of § 16–201. On November 29, 1984, the amount of $225,000 was a sum certain due MoPac under the ITA. *See People's Exchange Bank v. Miller*, 139 Kan. 3, 29 P.2d 1079, 1080 (1934). KG & E's breach of the agreement entitles MoPac to prejudgment interest.

The district court likewise appropriately awarded MoPac its attorneys' fees for the prosecution of this action. Under Kansas law, the prevailing party in a lawsuit may recover attorneys' fees where such is specifically authorized by statute or contract. *Farmers Casualty Co. v. Green*, 390 F.2d 188, 192 (10th Cir.1968); *Oak Park Inv. Co. v. Lundy's, Inc.*, 6 Kan.App. 2d 133, 626 P.2d 1236, 1237 (1981). Paragraph three of the ITA expressly includes attorneys' fees as part of the costs for which KG & E is responsible. KG & E agreed to indemnify MoPac for all damages, costs, and fees "arising out of or connected with" KG & E's failure to keep the sidetrack clear and passable. *See Brown v. Seaboard Coast Line R.R. Co.*, 554 F.2d 1299, 1304 (5th Cir.), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977) (language "any and all loss, cost, damage and expense" in indemnity contract was sufficient to encompass attorneys' fees resulting from action to enforce agreement). And so it shall be.

AFFIRMED.