72 F.3d 137
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 N. Caleb AVERY, Plaintiff-Appellant/Cross-Appellee,
v.
NORTHERN TELECOM, INC., a Delaware corporation; Northern
Telecom Finance Corporation, a Delaware
corporation,
Defendants-Appellees/Cross-Appellants.
 Nos. 94-1580, 94-1582.
 United States Court of Appeals, Tenth Circuit.
 Dec. 19, 1995.
 
 Before TACHA, BALDOCK and KELLY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 In this diversity case, plaintiff Avery appeals, contending that the trial court erred in (1) ordering that Mr. Avery could not introduce the testimony of his damages expert, Dr. Pacey, regarding lost profits of TDD, Inc.; (2) applying a two-year, rather than three-year, statute of limitations to Mr. Avery's claim of negligent misrepresentation; and (3) holding that Mr. Avery had no fraudulent inducement defense to Northern Telecom's affirmative defense of release. Additionally, defendants Northern Telecom, Inc. ("Northern Telecom") and Northern Telecom Finance Corporation ("Northern Finance") (collectively "Northern") cross appeal contending that the trial court erred in (1) denying Northern's motion for summary judgment based on the affirmative defense of release; and (2) excluding evidence of Northern's damages with respect to its counterclaims. We affirm the district court's judgment dismissing the action, but on the ground of release. Because the releases in question bar the remaining claims and counterclaims and dispose of the entire litigation, we need not reach the other issues. Our jurisdiction arises under 28 U.S.C. 1291.
 
 Background
 
 2
 Mr. Avery is the majority shareholder and president/CEO of TDD, Inc. Mr. Avery incorporated TDD in December 1990 to market and sell a computer software application developed by Northern Telecom called COMPASS. On January 4, 1991, TDD entered into a series of agreements with both Northern Telecom and Northern Finance, by which Northern granted TDD a nonexclusive right to distribute COMPASS. The agreements also provided that Northern Finance would establish a line of credit up to $3 million for TDD to set up its initial operations.
 
 
 3
 TDD drew down approximately $2.5 million on its line, but encountered various difficulties in its attempts to sell COMPASS, and by April 1991, defaulted. Aplt.App. 5, p 2 4. On October 23, 1991, TDD, Avery, Northern Telecom and Northern Finance entered into a series of settlement agreements which forgave TDD's debt to Northern Finance and terminated the nonexclusive distribution agreement. The settlement also included four separate releases between Mr. Avery individually, TDD, Northern Telecom and Northern Finance. The release by Mr. Avery of any claims against Northern Telecom stated:
 
 
 4
 Avery hereby acknowledges and stipulates that he has no claims or causes of action against NTI or its subsidiaries or affiliates of any kind whatsoever. Avery hereby releases NTI and NTI's ... subsidiaries ... from any and all claims, causes of action, demands and liabilities of any kind whatsoever ... which Avery has or may acquire in the future relating in any way to any event, circumstance, action or failure to act from the beginning of time to the date of this Agreement.
 
 
 5
 Aplt.App. at 38. The three other agreements contained similar language. Id. at 24, 34, 46.
 
 
 6
 Mr. Avery initiated this action against Northern Telecom and Northern Finance on December 31, 1993. Id. at 1. Northern filed a motion for summary judgment, arguing that Avery's claims were barred by the releases contained in the settlement agreements of October 23, 1991. Id. at 13-19. The district court denied Northern's motion for summary judgment. Id. at 96, 108-13. The court specifically ruled that while Avery was not fraudulently induced into the releases by Northern, id. at 109-10, the filing of crossclaims for indemnification and contribution against Avery and TDD by Northern Telecom in a separate lawsuit brought by TDD's landlord against Avery, TDD and Northern Telecom (the "Broderick litigation") could lead a reasonable trier of fact to conclude that Northern breached the release agreements and waived its right to assert them as a defense. Id. at 111-13. On the eve of trial, both Northern and Avery filed new motions for summary judgment based on the fact that the court, in granting the parties' motions in limine, had precluded both Northern and Avery from presenting evidence of damages, an essential element of their claims. Cross-Aplt. App. at 72, 116. As the parties were thus precluded from proving their damages, the court granted both motions for summary judgment, vacated the scheduled trial, denied any other outstanding motions as moot, and entered judgment dismissing the action. Id. at 116-17, 156. This appeal followed.
 
 Discussion
 A.
 
 7
 The district court rejected Northern's motion for summary judgment based on its interpretation of the language of the release agreements between Avery, Northern Telecom and Northern Finance. The interpretation of the language of the releases is a question of law subject to de novo review on appeal. Isaac v. Temex Energy, Inc. (In re Amarex), 853 F.2d 1526, 1529 (10th Cir.1988). Likewise, in reviewing the grant of a motion for summary judgment, our review is de novo and we apply the same standard used by the district court in evaluating the summary judgment motion, namely Fed.R.Civ.P. 56(c). Applied Genetics, Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). Summary judgment is appropriate if "there is no genuine issue to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). We may also affirm the judgment even though our analysis differs from that of the district court. City of Wichita, Kansas v. Southwestern Bell Tel. Co., 24 F.3d 1282, 1286 (10th Cir.1994).
 
 B.
 
 8
 "Generally speaking, the scope and extent of release depends on the intent of the parties as expressed in the instrument. A general release covers all claims between the parties which are in existence and within their contemplation...." Cross v. Earls, 517 S.W.2d 751, 752 (Tenn.1974).[2] The effect of a valid release is immediately to extinguish all causes of action that fall within the scope of the release. Kreutzmann v. Bauman, 609 S.W.2d 736, 736-39 (Tenn.Ct.App.1980). Based on the clear and unambiguous langage contained therein, we hold that the releases are general in nature, thereby extinguishing all claims between the parties, and that the scope of the releases extends to any potential causes of action accruing up to, but not beyond, October 23, 1991. There is no other reasonable interpretation of the language as drafted by the parties. Therefore, as of October 23, 1991, any claims that Avery had against Northern, or vice versa, which had accrued "from the beginning of time to [October 23, 1991]" were permanently barred by the releases.
 
 
 9
 In its motion for summary judgment, Northern pointed to the language of the releases themselves, the date that the parties executed the releases (October 23, 1991), and the fact that Avery alleges at no place in his complaint that his claims were based on any events that occurred after the date of the releases. Aplt.App. at 13-19. Northern satisfied its burden to show the absence of a genuine issue of material fact, and after reviewing the record, we do not see how Avery has demonstrated otherwise. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
 
 
 10
 On appeal, Avery argues that Northern waived its defense of release by filing its crossclaims for indemnity and contribution in the Broderick litigation. However, the Broderick litigation was not filed until February 11, 1992, Cross-Aplt. App. at 83, and it concerns events that arose subsequent to the period covered by the release. Northern points to the parties' Joint Stipulation of November 11, 1994, wherein the parties agreed that TDD had paid its October, 1991 rent to Broderick in full. Id. at 80. Therefore, the nonpayment of rent that was the subject of the Broderick litigation concerned events that occurred no earlier than November 1991, and not subject to the releases. Avery argues that because Northern "did not provide the trial court with any information about whether the October 1991 rent was paid when they presented their summary judgment argument," it failed to satisfy its summary judgment burden. However, it is Avery, and not Northern, that failed to meet its summary judgment burden to create a material fact issue with respect to the affirmative defense of release. Northern was not required to disprove Mr. Avery's contentions concerning the affirmative defense of release. See Celotex, 477 U.S. at 323-24.
 
 
 11
 Avery also argues that he has a legal defense to Northern's affirmative defense of release based on the doctrine of fraudulent inducement. We find that Mr. Avery has failed to establish a fact issue regarding his defense of fraudulent inducement. To prove his defense of fraudulent inducement, Avery must establish that he relied on Northern's false representations of material fact to his detriment. See Trimble v. City and County of Denver, 697 P.2d 716, 724 (Colo.1985) (en banc) (citing Bemel Assoc., Inc. v. Brown, 435 P.2d 407, 409 (Colo.1967)). Avery contends that he was defrauded into entering the releases by Northern's representation "that Northern Finance, and not Northern Telecom, was the source for the Loan." Aplt. Br. at 23. We are not persuaded by this argument. Rather, after reviewing the record, we agree with the district court, which held:
 
 
 12
 While the source of funding may have been material to his decision to enter the loan agreement and assume its accompanying obligations, [Avery] offers no evidence indicating that the funding source affected his decision to execute the releases. To the contrary, [Avery] entered release agreements with both Northern Telecom and NTFC. It is difficult to understand how he can now claim that the funding source was material to his decision concerning the releases.
 
 
 13
 Aplt.App. at 110 (emphasis in original). Avery has no defense against Northern's affirmative defense of release on the ground that Avery was fraudulently induced into entering the releases because no evidence supports this theory.
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order. 151 F.R.D. 470 (10th Cir.1993)
 
 
 [2]
 The October 23, 1991 Agreements incorporating the releases provide that Tennessee law is to govern their interpretation. Aplt.App. at 25, 35, 40, 47