**OAKVIEW TREATMENT CENTERS OF KANSAS, INC., Plaintiff,**

v.

**James W. GARRETT, Sr. and Bonita J. Garrett, Defendants.**

**No. CIV. A. 98–2164–KHV.**

United States District Court, D. Kansas.

June 8, 1999.

Reid F. Holbrook, Holbrook, Heaven & Osborn, P.A., Kansas City, KS, Thomas S. Busch, Kurt S. Brack, Holbrook, Heaven & Osborn, P.A., Merriam, KS, for plaintiff.

Mark G. Flaherty, J. Bradley Leitch, Sonnenschein, Nath & Rosenthal, Kansas City, KS, for defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on *Defendants' Motion For Summary Judgment* (Doc. # 40) filed April 6, 1999 and *Plaintiff's Motion For Summary Judgment* (Doc. # 47) filed April 14, 1999. Plaintiff alleges that defendants breached an indemnification agreement between the parties. For the reasons stated below, defendants' motion is denied and plaintiff's motion is sustained in part and denied in part.

### Facts

The following facts are either uncontroverted or viewed in the light most favorable to the nonmoving party.[1]

On February 5, 1991, Garrett & Associates, Inc. (GAI) filed an involuntary bankruptcy petition against Bernard Glannon. GAI, along with defendants James W. Garrett, Sr. and Bonita J. Garrett, approached Oakview Treatment Centers of Kansas, Inc. (Oakview) about joining the petition. In May of 1991, defendants executed an indemnification agreement in favor of Oakview.[2] Consequently, on May 7, 1991, Oakview joined the involuntary bankruptcy petition against Glannon. On May 15, 1991, Maxim, Inc. also joined the petition.

The indemnification agreement states, in its entirety, as follows:

The undersigned shall indemnify, protect, defend, and save harmless Oakview Treatment Centers of Kansas, Inc. a Kansas Corporation and its affiliates (Indemnitee) from and against any and all claims, demands, liabilities, and costs arising from damage or injury, actual or claimed, of whatever kind or character, arising out of Indemnitee's participation as a petitioning creditor in a certain case before the United States Bankruptcy Court for the District of Kansas at Topeka styled *In Re: Bernard D. Glannon* Case No. 91–40230–7. Upon notice from Indemnitee, the undersigned shall defend the Indemnitee in any action or proceeding brought thereon, including all attorney's fees and expenses. Without limiting the generality of the above, it shall be the responsibility of the undersigned to indemnify the Indemnitee in relationship to any contingent liabilities, whether known or unknown, affecting this indemnification.

The Honorable John Flannagan, United States Bankruptcy Judge for the District of Kansas, tried the involuntary bankruptcy case from April 27 to May 1, 1992. On May 4, 1992, he dismissed the involuntary petition because the petitioning creditors had failed to prove that Glannon was generally not paying his debts as they became due. Judge Flannagan also found that GAI had filed the petition in bad faith and that Oakview had joined in bad faith. Judge Flannagan specifically found that before Oakview joined the bankruptcy proceeding, it had received a letter from Glannon's counsel, warning that the bankruptcy had been filed for an improper purpose, advising that Glannon had defenses, and noting the consequences of joinder if the bankruptcy court found that the petition had been filed in bad faith. Judge Flannagan also noted that Oakview had violated the automatic stay provision of the Bankruptcy Code by trying to extract a payment from Glannon when the bankruptcy case was pending and the automatic stay was in effect, and that Oakview had failed to bill Glannon for the debt on which it based its claim in the bankruptcy and had acquiesced in his attempts to have the debt paid by insurance. Although Judge Flannagan dismissed the bankruptcy petition, he retained jurisdiction over Oakview to

---

1. Before reciting their statements of facts under D. Kan. Rule 56.1, both parties provide lengthy discussions about the facts of this case. The parties also introduce various facts in the argument sections of their briefs. The Court does not rely on any factual material which is presented in a format that does not comply with D. Kan. Rule 56.1.

2. David Carpenter, an attorney for defendants, drafted the indemnification agreement.

determine whether it should be liable for damages which Glannon suffered as a result of its bad faith actions. He specifically ordered that GAI, Oakview and their attorneys show cause why damages and sanctions should not be awarded against them.

While Maxim also joined the involuntary petition, it had not attempted to extract a settlement from Glannon in violation of the automatic stay, failed to bill Glannon for the debt on which it based its claim in bankruptcy, or acquiesced in Glannon's efforts to obtain payment from a third party. Judge Flannagan found that Maxim did join the involuntary bankruptcy proceeding in the face of the previously mentioned letter from Glannon's counsel, warning of the circumstances of the filing, Glannon's defenses, and the consequences of joinder.[3] Despite this finding, he did not hold that Maxim had joined the petition in bad faith.

On May 19, 1992, Oakview (through counsel David A. Welte of Polsinelli, White, Vardeman & Shalton) made written demand upon GAI and defendants to

indemnify and save harmless Oakview Treatment Centers of Kansas, Inc. from and against any claims, demands, liabilities, and costs arising from damage or injury arising out of Oakview's participation as a petitioning creditor in the captioned matter, as well as all other duties and obligations Garrett owes to Oakview pursuant to the terms and conditions of the Indemnification Agreement.

The letter did not itemize any expenses for which Oakview sought indemnification; indeed, at the time of the letter, Oakview had not yet incurred such expenses.[4] The letter did specifically reference the fact that Judge Flannagan had scheduled a

hearing on sanctions and damages, based on his finding that Oakview and GAI had filed the bankruptcy petition in bad faith.

On May 28, 1992, through counsel Michael B. Myers, defendants refused to indemnify Oakview for any costs or liability for any action taken by Oakview before or concurrently with the joining of the involuntary petition. Myers explained that the indemnification agreement did not cover such costs because Judge Flannagan had retained jurisdiction over Oakview based on its actions *before* it participated in the bankruptcy proceeding and not based on its participation *in* the proceeding. Myers stated

If you will review both the Journal Entry of May 4, 1992, and the actual transcript of the proceedings on that date you will find that the Judge found bad faith on the part of Oakview Treatment Centers for matters relating to actions they took *before* they joined as a petitioning creditor. Neither the Garretts personally nor Garrett & Associates, Inc. is obligated to indemnify and hold harmless Oakview for any action taken by Oakview before or concurrently with the joining of the involuntary petition.

As noted above, Judge Flannagan dismissed the involuntary petition on May 4, 1992. Eight months later, on January 20, 1993, Glannon filed a malicious prosecution action against Oakview and others, based on their filing of the petition. On November 25, 1996, attorney Reid F. Holbrook of Holbrook, Heaven & Osborn, P.A., made written demand that defendants and GAI reimburse it for attorneys' fees and costs which Oakview had incurred and for ongoing indemnification relating to other liabilities arising out of the Glannon bankruptcy.

---

**3.** At a phone conference held in connection with the status conference in this case, Oakview attempted to controvert this allegation. In *Plaintiff's Response To Defendants' Motion for Summary Judgment* (Doc. # 51) filed April 23, 1999, however, Oakview stated that this allegation was uncontroverted. *Id.* at 2. Under D. Kan. Rule 56.1, the allegation is un-

controverted for purposes of defendants' motion for summary judgment.

**4.** Around May 20, 1992, Oakview first incurred costs and expenses for which it seeks recovery under the indemnification agreement.

Around April 23, 1997, GAI, Glannon, defendants, and various insurance companies and law firms entered into a settlement agreement which provided a partial settlement with Glannon in exchange for $382,500.00 paid by insurance. On September 30, 1997, Oakview and Glannon settled all claims involved in the show cause proceeding and malicious prosecution complaint. Twelve months later, on September 17, 1998, Judge Flannagan entered judgment in the show cause proceeding, assessing damages against GAI and James Garrett and sanctions against their attorneys.

The Mediplex Group, Inc. and Sun Healthcare Group, Inc., the former and current parent companies of Oakview, paid the expenses which Oakview claims it is entitled to recover under the indemnity agreement. Oakview is obligated to repay Sun Healthcare Group, however, for these expenses. Oakview therefore filed suit on April 10, 1998, seeking to recover the costs and expenses related to the show cause proceeding and malicious prosecution action.

### Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is material only if it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A genuine factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505. The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v.*

*City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which it carries the burden of proof. *Applied Genetics Int'l Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics*, 912 F.2d at 1241.

[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment. *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir.1988). Essentially, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### Analysis

**1. Defendants' Motion For Summary Judgment**

**A. Statute of Limitations**

■ Defendants first argue that Oakview's breach of contract claim is barred by the five-year statute of limitations set forth in K.S.A. § 60–511(1). Because the statute of limitations is an affirmative de-

fense, defendants bear the burden of proving the lack of genuine issues of material fact. *See Avery v. Northern Telecom. Inc.*, 72 F.3d 137 (10th Cir.1995) (Table, text available on Westlaw at 72 F.3d.137, 1995 WL 749691).

■ Under Kansas law, the statute of limitations for Oakview's breach of contract claims began to run when defendants allegedly breached the contract. *See Voth v. Chrysler Motor Corp.*, 218 Kan. 644, 651, 545 P.2d 371 (1976); *Wolf v. Brungardt*, 215 Kan. 272, 279, 524 P.2d 726 (1974). A cause of action accrues when the right to institute and maintain a suit arises, or when there is a demand capable of present enforcement. *Holder v. Kansas Steel Built, Inc.*, 224 Kan. 406, 410, 582 P.2d 244, 248 (1978). There must be a right, a duty, and a default. *Edward Kraemer & Sons. Inc. v. City of Overland Park*, 19 Kan.App.2d 1087, 1091, 880 P.2d 789, 793 (1994).

Defendants argue that they absolutely repudiated the indemnification agreement on May 28, 1992, when their counsel advised that [n]either the Garretts personally nor Garrett & Associates, Inc. is obligated to indemnify and hold harmless Oakview for any action taken by Oakview before or concurrently with the joining of the involuntary petition. Defendants argue that Oakview's claim arose when it received this letter, because it then had notice that defendants did not intend to honor the indemnification agreement. Defendants contend that once a plaintiff realizes that a defendant has no intention of honoring an agreement, the cause of action accrues. *See Johnson v. Kansas Public Employees Retirement System*, 262 Kan. 185, 192, 935 P.2d 1049, 1054 (1997) (citing *Arnold v. S.J.L. of Kansas Corp.*, 249 Kan. 746, 822 P.2d 64 (1991)).

At best, because Oakview had not incurred any costs or demanded reimbursement for specific expenditures at the time it demanded performance on May 19, 1992, defendants' letter of May 28, 1992 constituted an anticipatory repudiation of liability for expenses which Oakview had yet to incur in relation to the show cause proceedings.[5] Under Kansas law, in cases of anticipatory repudiation, plaintiff has three options: (1) bring an immediate suit for damages; (2) treat the contract as still binding and bring an·action only after the time for performance by the promisor has passed; or (3) rescind the contract and sue for money paid or the value of services or property furnished. *Rupe v. Triton Oil & Gas Corp.*, 806 F.Supp. 1495, 1499 (D.Kan. 1992) (citing *Stauth v. Brown*, 241 Kan. 1, 734 P.2d 1063, Syl. ¶ 8 (1987)).

Both *Arnold* and *Johnson*, on which defendants rely, are distinguishable from the present case. *Arnold* concerned a television station's agreement to promote plaintiff to the position of chief photographer when its current chief photographer left the news department. Plaintiff entered the employment agreement in 1978, based on the promise of the chief photographer that he would step down in June of 1979. Plaintiff's agreement, however, did not include any specific time for the promotion. The chief photographer did not leave in 1979, but stayed until 1989. In 1980, the station was sold and the new management told plaintiff that it was not bound by the previous agreement. Plaintiff claimed that defendant breached the prior agreement, but the Kansas Supreme Court held that K.S.A. § 60–511 barred plaintiff's claim because plaintiff did not file suit within five years of when it became apparent his employer was not going to honor the agreement. 249 Kan. at 751, 822 P.2d at 68.

*Johnson* concerned the loss of pension plan benefits. In 1974, the City of Man-

---

**5.** Oakview's letter of May 19, 1992 did not ask defendants to defend them in the show cause proceeding, but only demanded indemnification for costs and expenses to be incurred therein. Defendants' response did not dis-

claim any duty to defend the show cause proceeding and it had no occasion to address the malicious prosecution action that Glannon filed on January 20, 1993.

hattan consolidated its law enforcement with Riley County. 262 Kan. at 185–86, 935 P.2d at 1050–51. As a result, in 1974, plaintiff employees stopped contributing to the city's pension plan. In 1990, plaintiffs filed suit to recover the benefits they would have received if the city had not consolidated with the county. *Id.* at 191, 935 P.2d at 1053. The Kansas Supreme Court held that plaintiffs' cause of action arose in 1974, when the pension plan ended, because the city had become legally incapable of funding plaintiffs' benefits. *Id.* Once the pension plan ended, plaintiffs knew then they could not collect any more benefits under the City plan. *Id.* at 192, 935 P.2d at 1054.

Both *Arnold* and *Johnson* fall within the rule stated in *Rupe*:

> [I]n Kansas, if a cause of action for anticipatory breach of contract is brought after the time set for performance, the action accrues on the date that such performance was due—unless the breach rendered future performance a legal or factual impossibility and the non-breaching party has fully performed.

*Rupe*, 806 F.Supp. at 1499. In *Arnold*, performance became factually impossible in 1980 when the promisor sold the television station. Plaintiff could no longer enforce the agreement against the contracting party and the new owner informed plaintiff that it was not bound by the agreement. The record does not suggest that the new owner had any obligation to honor the agreement, and plaintiff waited for nine years, until November of 1989, to file suit. In *Johnson*, performance was legally impossible because the original pension plan was terminated by statute, performance was legally impossible. In this case, defendants do not establish that performance was factually or legally impossible. Even if defendants' letter of

May 28, 1992 was an anticipatory repudiation of certain contractual obligations, it was not impossible for defendants to rescind their partial repudiation and fully perform those obligations (along with other, unrepudiated, obligations) under the agreement.

It therefore appears from this record that Oakview was entitled to await the time for performance before bringing suit. In this regard, Oakview argues that it made consecutive requests for indemnification and that defendants' various refusals to pay constituted separate breaches which commenced separate statute of limitations periods. In other words, Oakview argues that the indemnification agreement required defendants to make payments under a continuing contract and that a cause of action for breach accrued whenever defendants refused to make a payment which had become due. *See Rupe*, 806 F.Supp. at 1498.

The Court agrees that in this case, the indemnification agreement required defendants to indemnify Oakview for any and all claims, demands, liabilities, and costs arising from damage or injury, actual or claimed, of whatever kind or character, arising out of Indemnitee's participation as a petitioning creditor in ... *In Re: Bernard D. Glannon,* and that a potential breach occurred whenever defendants wrongfully denied a new claim for indemnification.

In this case, no performance was due until Oakview had incurred expenses and made demand for indemnification.[6] Defendants' evidence is that on or about May 20, 1992, Oakview first incurred costs and expenses which it seeks to recover under the indemnification agreement. *See Memorandum In Support Of Defendants' Motion for Summary Judgment* (Doc. # 41) filed April 6, 1999 at 10, ¶ 17. Defendants

---

6. Oakview concedes that litigation expenses incurred and paid for prior to five years before its suit was filed on April 10, 1998, cannot be recovered. *See Plaintiff's Response To Defendants' Motion for Summary Judgment*

(Doc. # 51) filed April 23, 1999 at 13. The dates on which Oakview incurred various expenses are perhaps less relevant, however, than the dates on which defendants denied the periodic requests for indemnification.

have not shown when Oakview demanded indemnification for the various expenses, however, or the dates when defendants rejected such requests. For these reasons, defendants have not discharged their initial summary judgment burden of showing that claims which accrued on or after May 28, 1992 should be barred. *See Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. 2548; *Hicks v. City of Watonga,* 942 F.2d at 743.

## B. Application of the Indemnity Agreement

Defendants argue that Oakview essentially seeks to recover costs which it incurred as a result of its own conduct, prior to the bankruptcy proceeding, and that as a matter of law such costs are not covered by the indemnity agreement. Judge Flannagan found that before Oakview joined the bankruptcy proceeding, it had (1) received a letter from Glannon's counsel, warning that the bankruptcy had been filed for an improper purpose, advising that Glannon had defenses, and noting the consequences of joinder if the bankruptcy court found that the petition had been filed in bad faith; (2) violated the automatic stay of the Bankruptcy Code by trying to extract a payment from Glannon when the bankruptcy case was pending and the automatic stay was in effect; and (3) failed to bill Glannon for the debt on which it based its claim in the bankruptcy and had acquiesced in his attempts to have the debt paid by insurance. Defendants base their argument on the premise that the indemnity agreement does not cover pre-petition conduct and they argue that Judge Flannagan relied solely on pre-petition conduct in finding bad faith by Oakview. In support of this argument, defendants note that both Oakview and Maxim joined the involuntary petition, but Judge Flannagan did not find that Maxim had acted in bad faith. Based on this fact, defendants argue that as a matter of law, neither Oakview nor Maxim joined the petition in bad faith.

The Court disagrees. First, to the extent that Oakview's bad faith in filing the bankruptcy petition is a defining issue, the question is whether Oakview joined the petition in bad faith and not whether Judge Flannagan so found. Moreover, the evidence suggests that Judge Flannagan did not rely solely on pre-petition actions in determining that Oakview had joined the bankruptcy petition in bad faith. Rather, it suggests that Judge Flannagan merely inferred from Oakview's prior conduct that it had joined the bankruptcy proceeding in bad faith. For example, Judge Flannagan did not find that Oakview acted in bad faith when it received the letter from Glannon's counsel. He instead found that Oakview had joined [the petition] without reasonable investigation or inquiry in the face of this letter. *See* Doc. # 41, ex. 2 at 3.

■ Defendants' argument that it did not assume liability for pre-petition conduct may have superficial appeal, because the indemnification agreement does not expressly assume liability for such costs. On the other hand, defendants solicited Oakview's participation in the bankruptcy petition, and their attorney drafted the indemnification agreement. If defendants intended to disclaim liability for Oakview's conduct before or concurrently with the joining of the involuntary petition, their broad contractual commitment was ill-suited to that purpose. Defendants are therefore not entitled to summary judgment on either theory—*i.e.* that Judge Flannagan sanctioned Oakview for only pre-petition conduct or that the indemnification agreement does not reach pre-petition conduct.

In this regard, it is important to note that the indemnification agreement is a broad one. It provides indemnification for any and all costs, of whatever character, arising out of Oakview's participation as a petitioning creditor. In arguing that Judge Flannagan sanctioned Oakview for pre-petition conduct which falls outside the scope of the indemnification agreement, defendants ignore two crucial points.

First, by concentrating their attention on the factual basis for Judge Flannagan's decision, they ignore the more salient point—that he predicated the sanctions order on Oakview's participation as a petitioning creditor. Second, defendants agreed to indemnify Oakview for any and all costs, of whatever character, arising from Oakview's participation as a petitioning creditor. On its face, such language does not preclude liability which indirectly flows from pre-petition conduct by Oakview.

Second, a reasonable jury could infer that Judge Flannagan required Oakview to show cause exactly *because* it had chosen to participate in the bankruptcy proceeding, despite its prior actions such as an arguably insufficient investigation. Defendants cannot reasonably argue otherwise. Judge Flannagan retained jurisdiction over Oakview because it had joined the bankruptcy petition; otherwise, he could not have sanctioned Oakview as he did. *See* 11 U.S.C. § 303(i) (allowing expenses against petitioning party if involuntary petition is dismissed).

■ In addition, defendants fail to introduce evidence regarding the claims in the malicious prosecution action. The Court therefore cannot determine whether a reasonable jury could find that the malicious prosecution action involved pre-petition conduct which is even arguably excluded from the indemnity agreement. The moving party bears the initial burden of showing an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). By not introducing evidence regarding the malicious prosecution claim, defendants have failed to meet their initial burden on summary judgment. The record is simply in-

sufficient to find a lack of genuine issues of material fact.[7]

## 2. Oakview's Motion For Summary Judgment

### A. Application of the Indemnity Agreement

■ Oakview argues that it is entitled to summary judgment because all of its costs and expenses are covered by the indemnification agreement. The indemnity agreement covers costs arising out of [Oakview's] participation as a petitioning creditor. Unambiguous contracts are enforced according to their plain, general, and common meaning in order to ensure the intentions of the parties are enforced. The intent of the parties is determined from the four corners of an unambiguous instrument, harmonizing the language therein if possible. Ambiguity does not appear ... [unless it is] genuinely uncertain which of two or more meanings is the proper meaning. *Neustrom v. Union Pacific Railroad Co.,* 156 F.3d 1057, 1063 (10th Cir.1998) (citing *Hall v. JFW, Inc.,* 20 Kan.App.2d 845, 893 P.2d 837, 840 (1995)). Because the agreement covers costs arising out of Oakview's participation in the involuntary petition, the agreement covers costs which are reasonably incident to or anticipated by Oakview's involvement in the bankruptcy proceeding. *Missouri Pacific Railroad Co. v. Kansas Gas & Electric Co.,* 862 F.2d 796, 798 (10th Cir. 1988) (citing *Fontenot v. Mesa Petroleum Co.,* 791 F.2d 1207, 1214 (5th Cir.1986)).

In this case, the indemnification agreement unambiguously covers those costs and expenses, and only those costs and expenses, arising out of Oakview's participation in the involuntary petition. The agreement does not create liability for costs and expenses that were wholly independent of the involuntary petition, but it does create liability for costs and expenses

---

7. In *Defendants' Memorandum In Opposition To Plaintiff's Motion For Summary Judgment* (Doc. # 52), defendants do cite evidence regarding the malicious prosecution claim., but

defendants do not cite any such evidence in connection with their own motion for summary judgment.

incurred by reason of Oakview's joinder in the involuntary petition. The parties do not appear to disagree about these fundamental matters of contract interpretation, but they disagree whether the agreement covers pre-petition conduct and if not, what acts or omissions constitute pre-petition conduct.

■ For reasons previously stated, the Court is unpersuaded that the distinction between pre-petition and post-petition conduct provides a relevant analytical framework under the indemnification agreement in this case. When they drafted and executed the indemnification agreement, and solicited Oakview's joinder in the involuntary petition, defendants could reasonably anticipate that if Judge Flannagan were to later inquire whether Oakview joined the involuntary petition in bad faith, he would consider all relevant factors, pre-petition or post-petition, which might reveal Oakview's state of mind based on information known by or available to it at the time of joinder. Judge Flannagan indeed sanctioned Oakview under 11 U.S.C. § 303(i), which allows expenses to be assessed against a petitioning creditor if an involuntary petition is dismissed. The factual analysis which yielded this holding may have encompassed pre-petition events. The sanctions which Judge Flannagan imposed nonetheless arose out of Oakview's participation as a petitioning creditor. The indemnification agreement therefore reaches the costs and expenses which Oakview incurred in the show cause proceeding; such obligations were both reasonably incident to and anticipated by Oakview's involvement in the involuntary petition.

The same is true with respect to defendants' argument that Oakview failed to conduct a reasonable investigation into the validity of the involuntary petition and that its omission constitutes pre-petition conduct which falls outside the scope of the indemnification agreement.

■ While aspects of the malicious prosecution matter may easily fall within reach of the indemnification agreement, the Court cannot so find without examining the subject matter of the malicious prosecution suit. On plaintiff's motion for summary judgment, neither party has introduced evidence of the allegations in the malicious prosecution case. Oakview therefore fails to meet its initial burden of proving that the claims in the case arose out of its participation in the bankruptcy proceeding.[8]

Even if the Court were to scour the malicious prosecution record on its behalf, Oakview would not be entitled to summary judgment on this claim. While the parties have termed Glannon's suit a malicious prosecution action, the record suggests that Glannon challenged more than the mere filing of the involuntary petition. In one claim, for example, Glannon alleged that Oakview breached 11 U.S.C. § 362 because it violated the automatic stay that began when GAI filed the involuntary petition against Glannon. This particular claim does not implicate or even mention Oakview's participation in the bankruptcy proceeding; rather, it implicates Oakview's actions independent of the bankruptcy proceeding. Arguably, it is beyond the scope of the indemnification agreement because any violation was not reasonably incident to or anticipated by Oakview's joinder in

8. Oakview introduces the complaint in the malicious prosecution action, but it does not cite any specific provisions which show what conduct Glannon challenged. Oakview therefore fails to comply with D. Kan. Rule 56.1, which requires that Oakview refer with particularity to those portions of the record upon which [Oakview] relies. The Court is not required to scour the record for evidence to support Oakview's allegations; Oakview must demonstrate how the evidence supports its claims. *See Gross v. Burggraf Constr. Co.,* 53 F.3d 1531, 1546 (10th Cir.1995) (quotation omitted); *Downes v. Beach,* 587 F.2d 469, 471 (10th Cir.1978) (While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out.).

the bankruptcy petition. *See Missouri Pacific*, 862 F.2d at 798. A reasonable jury could therefore find that the indemnification agreement did not obligate defendants to cover all of Oakview's expenses in the malicious prosecution suit, and Oakview's motion for summary judgment on this point therefore must be denied.

## B. Prejudgment Interest & Attorneys' Fees

Oakview claims that as a matter of law, it is entitled to statutory prejudgment interest of ten percent on all attorneys' fees, expenses, and settlement costs under K.S.A. § 16–201. Defendants do not challenge Oakview's claim for recovery of such interest.

■ Oakview also claims that as a matter of law, it is entitled to recover the attorneys' fees which it has incurred in enforcing the terms of the indemnification agreement. Defendants argue that the indemnification agreement does not cover such costs. Under Kansas law, the prevailing party in a lawsuit may recover attorneys' fees where the fees are specifically authorized by statute or contract. *Missouri Pacific*, 862 F.2d at 801 (citing *Farmers Casualty Co. v. Green*, 390 F.2d 188, 192 (10th Cir.1968); *Oak Park Inv. Co. v. Lundy's, Inc.*, 6 Kan.App.2d 133, 626 P.2d 1236, 1237 (1981)). Under the express terms of the agreement, defendants agreed to indemnify Oakview for any and all claims, demands, liabilities, and costs arising from damage or injury, actual or claimed, of whatever kind or character. The agreement also provided that [u]pon notice from Indemnitee, the undersigned shall defend the Indemnitee in any action or proceeding brought thereon, including all attorney's fees and expenses .... The last phrase clearly covers attorneys' fees. *See Neustrom*, 156 F.3d at 1068.

Even if the Court ignores the latter phrase and looks only to the first phrase, the Court finds it is sufficiently broad to allow recovery of attorneys' fees in this case. Defendants argue that *Missouri*

*Pacific* allowed attorneys' fees only because the agreement expressly included such fees. *See* 862 F.2d at 797. The Court disagrees. In discussing whether the agreement covered attorneys' fees, the Tenth Circuit in *Missouri Pacific* focused on the general terms of the agreement which allowed recovery of all damages, costs and fees. *Id.* at 801. The Court did not mention the express attorneys' fee clause, and it relied upon a case which allowed attorneys' fees under the phrase any and all loss, cost, damage and expense with no other mention of attorneys' fees. *Id.* (citing *Brown v. Seaboard Coast Line R.R. Co.*, 554 F.2d 1299, 1304 (5th Cir.), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977)).

■ Oakview argues that as a matter of law it is entitled to a 40 percent contingent fee. Under Kansas law, the Court must determine that the fee award is reasonable. *See Neustrom*, 156 F.3d at 1068. Defendants argue that Oakview has introduced no evidence regarding the reasonableness of this amount and that it therefore is not entitled to 40 percent as a matter of law. Oakview responds by citing *Miller v. Botwin*, 258 Kan. 108, 899 P.2d 1004 (1995), which determined that a 50 percent contingent fee award was reasonable. In *Miller*, however, the record contained expert testimony that 50 percent was a reasonable fee because the case involved ad valorem taxation, a technical area of law where it is difficult to achieve success because of the presumption that the taxed amount is correct. *See id.* at 113, 899 P.2d at 1009. In addition, the expert testified that he himself typically charged a 50 percent contingency fee, because of the difficult burden for victory and the fact that the attorney bears the entire risk of losing. *Id.* The expert noted that without such a high percentage, he would lose money working on ad valorem taxation cases. *Id.* The Kansas Supreme Court did not find in *Botwin* that 50 percent is a reasonable fee as a matter of law; it found that 50 percent was reasonable

based on the record evidence regarding the circumstances of that case. Indeed, the court noted the importance of introducing evidence regarding the reasonableness of the fee award. *See id.* at 115, 899 P.2d at 1010. In this case, Oakview presents no evidence regarding the reasonableness of its arrangement; it merely argues that because the Kansas Supreme Court found 50 percent to be reasonable in *Botwin*, 40 percent must be reasonable in this case. This argument ignores any examination of the relevant circumstances in determining a reasonable fee. From the present record, the Court cannot conclude that a 40 percent contingent fee award is reasonable as a matter of law.

### C. Oakview's Failure to Incur Any Costs

■■ Defendants argue that Oakview is not entitled to summary judgment because Oakview has not incurred any costs. Specifically, Oakview did not pay any of the costs or expenses that it seeks to recover under the indemnification agreement. The Mediplex Group, Inc. and Sun Healthcare Group, Inc., the former and current parent companies of Oakview, paid these expenses. Oakview, however, is obligated to repay Sun Healthcare Group for the expenses.

Defendants cite *Lightcap v. Mobil Oil Corp.*, 221 Kan. 448, 463, 562 P.2d 1, 12 (1977), to support their argument that because the parent corporations paid the expenses, Oakview cannot bring the present action. Defendants cite *Lightcap* for the proposition that [i]ndemnity against losses does not cover losses for which the indemnitee is not liable to a third person, and which he improperly pays. *Id.* (citing 41 Am.Jur.2d, Indemnity, § 33). Defendants' argument, however, twists the intent of *Lightcap.* The quoted phrase does not address the situation presented here, where defendants are arguing that merely because the parent corporations were not liable initially, Oakview cannot recover the

costs and expenses for which it is ultimately liable. *Lightcap* might be germane if Oakview was not liable to a third party yet decided to pay anyway. As Oakview notes, the fact that Oakview's parent corporations initially paid for the expenses does not mean that Oakview has not incurred the debts and costs. Indeed, on this record, Oakview is obligated to repay these expenses. Defendants' application of *Lightcap* strains credulity, and the Court does not address it further.

■■ Defendants also make a convoluted argument that Oakview is not entitled to indemnification because it has not shown that it reasonably settled its disputes with Glannon. Defendants base this argument on the fact that Oakview may not have had the ability to fund a settlement, and that the settlement was therefore unreasonable.[9] To recover its settlement expense, Oakview need only show that it was under 'potential liability ... and that the settlement amount was reasonably related to [Glannon's] injuries.' *Neustrom*, 156 F.3d at 1067 (quoting *Missouri Pacific*, 862 F.2d at 800).

Defendants cite no case which requires plaintiff to prove its financial ability to pay a settlement before it can seek indemnification. On this record, it is clear that Oakview was subject to a potential liability, and defendants provide no reason to believe that the fact or amount of the settlement was unreasonable. Defendants argue that the settlement amount was unreasonable because it *may have* exceeded Oakview's assets. This argument does not hold water. Oakview's financial situation, whatever it may have been, does not prevent it from seeking enforcement of an otherwise valid indemnity agreement.

### D. Release of GAI

■■ Defendants argue that summary judgment is inappropriate to the extent that Oakview's recovery must be offset by the value of GAI's release. When Oakview

9. Neither party mentions who paid the settlement, if it has been paid.

settled with Glannon, the parties released GAI from any liability under the indemnity agreement. When two or more debtors are jointly and severally liable on an obligation, the release of one of the debtors discharges the obligation of the other debtor only to the extent of the consideration paid for said release. *Bazine State Bank v. Pawnee Prod. Serv., Inc.*, 245 Kan. 490, 497–98, 781 P.2d 1077, 1083 (1989) (citing *Misco Leasing, Inc. v. Bush*, 208 Kan. 45, Syl. ¶ 1, 490 P.2d 367 (1971)). Oakview concedes that GAI's release must be taken into account, but argues that GAI's release had no value whatsoever and that its recovery should not be reduced on account of any consideration supplied by GAI. Neither party makes any proper factual allegations regarding whether GAI gave any consideration for its release, or the value of that consideration. The Court therefore cannot determine the amount of any offset.

**IT IS THEREFORE ORDERED** that *Defendants' Motion For Summary Judgment* (Doc. # 40) filed April 6, 1999 be and hereby is **DENIED.**

**IT IS FURTHER ORDERED** that *Plaintiff's Motion For Summary Judgment* (Doc. # 47) filed April 14, 1999 be and hereby is **SUSTAINED** in part, in that the Court finds as a matter of law that the indemnification agreement covers those costs and expenses (pre-petition and post-petition) which Oakview reasonably incurred in the show cause proceeding; that Oakview is entitled to prejudgment interest on all attorneys' fees, expenses and settlement costs under K.S.A. § 16–201; and that Oakview is entitled to recover the reasonable attorneys' fees which it has incurred in enforcing the terms of the indemnification agreement. Plaintiff's motion is otherwise **DENIED.**